In re Application of Arthur CONNOL-LY, Petitioner–Appellant,

and

Danny Abrams and Laura Abrams, Respondents–Appellees,

and Concerning Elizabeth Connolly and Allison Connolly, Appellees.

No. 85CA0986.

Colorado Court of Appeals, Div. I.

Feb. 4, 1988.

Certiorari Granted (Abrams) Sept. 12, 1988.

Cox & Padmore, P.C., Jonathan C.S. Cox, Vicki M. Buchanan, Denver, for petitioner-appellant.

Polidori, Rasmussen, Gerome & Jacobson, Katherine Campbell, John R. Rasmussen, Lakewood, for appellees.

PIERCE, Judge.

Prior Opinion Announced on December 10, 1987 WITHDRAWN.

Petition for Rehearing GRANTED.

Arthur Connolly (father) appeals the trial court judgment entered in favor of Danny and Laura Abrams (the Abrams), on behalf of the two minor children, Elizabeth and Allison Connolly, for arrearages of child support. We affirm in part and reverse in part.

In 1977, the marriage of Jean Connolly (mother) and the father was dissolved by decree. Pursuant to court order, the mother was awarded custody of the parties' two daughters, Elizabeth and Allison, and the father was ordered to pay child support of $350 per month directly to her. Temporary custody of Allison was later awarded to the father by court order in October 1978.

From 1977 until February 1983, the father made all support payments for Elizabeth directly to his ex-wife in accordance with the court order. Also, because Allison did not reside with him, the father made payments for her support directly to those persons with whom she was living.

In February 1983, the mother died, and the father ceased making payments for child support.

Prior to her mother's death, Elizabeth lived with her mother at the Abrams' residence, while Allison resided with various friends and relatives. After their mother's death, the father assumed custody and both children moved in with him. However, father and daughters found themselves incompatible, and, after approximately one month, both children moved to different locations. Elizabeth returned to the Abrams' home, while Allison moved in with the guardian specified in her mother's will. Except for that partial month period, neither child has lived with her father.

In November 1984, Allison, having attained the age of nineteen, filed a motion, by way of retained counsel, to intervene in the dissolution action seeking arrearages of child support allegedly accruing since the death of her mother. The Abrams later sought custody of Elizabeth and arrearages based on the dissolution decree for child support which they alleged also had accrued since the death of the mother. The father then initiated an action, and the various claims were consolidated in the proceeding at issue.

All parties stipulated to the Abrams obtaining custody of Elizabeth, and an agreement was reached with respect to the future care and support of Elizabeth. After a hearing on the issue of arrearages from the time of the mother's death until the filing of this action, the trial court concluded that the father was liable for arrearages of child support. The court determined the amount of arrearages due by multiplying the monthly award of $175 per month per child, as stated in the dissolution decree, by the number of months which had elapsed since the death of the mother, and it entered judgment in favor of the Abrams for that entire sum. The trial court then ordered father to pay all of Allison's attorney fees, 25% of the Abrams' attorney fees, and all fees of the guardian ad litem, who had been appointed by the court for Elizabeth. The court also directed father to make payments of support directly to Allison until her twenty-first birthday.

I.

The father contends that the trial court erred in awarding arrearages of child support based on the 1977 dissolution decree. We agree.

There is no dispute that the father owes a duty of support to his minor, unemancipated children. *See McQuade v. McQuade*, 145 Colo. 218, 358 P.2d 470 (1960). Nor is it contended that this duty terminated upon the mother's death. *See In re Marriage of Icke*, 189 Colo. 319, 540 P.2d 1076 (1975). Rather, the issue is whether arrearages could have accrued from the time of the mother's death until the time of this action pursuant to a dissolution decree which ordered the father to make support payments directly to the mother who is now deceased.

Nothing in the decree itself provided for an alternative recipient of support payments in case of the mother's death. Also, § 14–10–117(1), C.R.S. (1987 Repl.Vol. 6B), provides that:

"Upon its own motion or upon motion of either party, the court may at anytime order that maintenance or support payments be made to the clerk of the court, as trustee, for remittance to the person entitled to receive the payments."

However, no attempt was ever made to use this procedure or to commence any independent action under the common law or family necessaries statute. *See* § 14–6–110, C.R.S., (1987 Repl.Vol. 6B).

For purposes of the circumstances at issue, we hold that, absent some type of provision or court directive to the contrary, the father's duty of support *pursuant to the decree* terminated upon the mother's death, although his common law and statutory duty of support continued. *See generally Ross v. Azcarate*, 39 Wash.App. 245, 692 P.2d 897 (1984). Therefore, none of the parties here had a claim of right to intervene in the dissolution action to seek arrearages of child support alleged to have accrued pursuant to the 1977 decree following the mother's death.

We express no opinion on whether the Abrams have a cognizable claim for family necessaries, either at common law *see O'Brien v. Galley–Stockton Shoe Co.*, 65 Colo. 70, 173 P. 544 (1918), or under § 14–6–110. Additionally, we find it unnecessary at this time to consider, *sua sponte*, whether § 14–10–116, C.R.S. (1987 Repl. Vol. 6B) authorizes only the guardian ad litem to pursue support on behalf of the children under the decree after the death of the mother. *See In re Marriage of Conradson*, 43 Colo.App. 432, 604 P.2d 701 (1979).

## II.

We also address father's contention that the trial court erred in concluding that his eldest daughter was unemancipated. Again, we agree.

■ What constitutes emancipation is a question of law. *In re Marriage of Robin-* son, 629 P.2d 1069 (Colo.1981). In determining whether emancipation has been established, the court must consider all the facts and circumstances, especially any conduct inconsistent with the continuation of parental and filial legal rights and obligations. *Napolitano v. Napolitano*, 732 P.2d 245 (Colo.App.1986); *In re Marriage of Weisbart*, 39 Colo.App. 115, 564 P.2d 961 (1977). Significant factors in determining emancipation include the financial independence of the child and control of his/her own earnings, and also the child's establishing of a residence away from the family domicile. *Napolitano v. Napolitano, supra; In re Marriage of Weisbart, supra.*

■ The record here establishes the emancipation of Allison as a matter of law. After her mother's death, the daughter went to live with her father for approximately one month before she left his home. She left of her own volition and rented an apartment by herself. She then commenced working at two separate jobs. Although her income was not substantial, the record shows that she was at all times in full control of her earnings, and she paid all her own bills, although she was partially dependent on financial support from other persons. She admitted that she was not under the control of her father and also that she never sought his financial assistance. Although her lifestyle at age 19 was not that which she desired, the pertinent circumstances show that for purposes of the arrearages sought here, as well as the future payments ordered by the court, she was emancipated as a matter of law. *See In re Marriage of Wesibart, supra.*

## III.

Inasmuch as the appointment of a guardian ad litem was appropriate under the circumstances of this case, we find no abuse of discretion in ordering the father to pay those fees. *See* § 14–10–116, C.R.S. (1987 Repl.Vol. 6B).

## IV.

Finally, in light of our holding, the award of attorney fees must be reversed and on

remand, the reasonableness of that award must be reconsidered.

Therefore, that portion of the trial court's judgment requiring the payment of the guardian ad litem's fees is affirmed, and the remainder of the judgment is reversed.

BABCOCK, J., concurs.

METZGER, J., concurs in part, dissents in part.

METZGER, Judge, dissenting.

I respectfully dissent from part I of the majority opinion. In my view, the majority has misconstrued the law and has improperly placed the burden for obtaining child support on the children rather than on the one obligated to pay. Accordingly, I would affirm the trial court's order.

The needs of the children are of paramount importance in determining child support obligations. *Wright v. Wright,* 182 Colo. 425, 514 P.2d 73 (1973). *See also* § 14–10–115, C.R.S. (1987 Repl.Vol. 6B). Thus, the provisions of a child support order may not be altered by agreement of the parties, *Wright v. Wright, supra,* or by willful violation of a custody decree by the custodial parent. *County of Clearwater v. Petrash,* 198 Colo. 231, 598 P.2d 138 (1979).

Past due child support payments in themselves constitute a debt, *Colorado State Bank v. Utt,* 622 P.2d 584 (Colo.App.1980), and may not be modified retroactively. Section 14–10–122(1)(a), C.R.S. (1987 Repl. Vol. 6B). Because the father here took no action to modify or to terminate his child support payments, each installment became a final money judgment when due. Section 14–10–122(1)(c), C.R.S. (1987 Repl.Vol. 6B). Consequently, those monthly debts continued to accrue following the mother's death to a total of $4,200 for each child.

In my view, the father cannot now seek retroactive modification of the payments on the basis that the recipient named in the decree has died. Because child support payments are for the sole benefit of a child, the recipient of those payments acts in the nature of a trustee with the duty to use the payments for the child's needs. Just as a trust does not fail for want of a trustee, a child support order should not lose its vitality on the death of the adult recipient who was designated to receive and expend the money on the child's behalf. The obligor's duty to support and the children's needs continue unabated. *See* § 14–10–122(3), C.R.S. (1987 Repl.Vol. 6B); *In re Marriage of Icke,* 189 Colo. 319, 540 P.2d 1076 (1975).

I believe that the minor children should not be burdened with the obligation to obtain counsel, to ask the court to determine their custodial status, and to enforce their father's unquestioned duty of support. If, when the mother died, the father had wished to obtain custody, or had wished to modify his support obligation, he was free to request the court to make such a change. Instead, he merely took the children into his home for a period of approximately five weeks, and when that arrangement proved to be mutually unsatisfactory, farmed them out to friends who, without any legal duty to do so, were willing to supply them with the necessities of life. He should not now be able to escape his support obligation by contending that his minor children were required to take legal action to ensure that he fulfilled his duty to them.

The majority permits a parent ordered to pay child support to evade this obligation and, as a result, frustrates the purposes of the Uniform Dissolution of Marriage Act, one of which is "to mitigate the potential harm to ... children caused by the process of legal dissolution of marriage." Section 14–10–102(2)(b), C.R.S. (1987 Repl.Vol. 6B).

Consequently, I would affirm the trial court's order.