**Danny ABRAMS and Laura Abrams, and Concerning: Elizabeth Connolly and Allison Connolly, Petitioners,**

**v.**

**Arthur CONNOLLY, Respondent.**

No. 88SC98.

Supreme Court of Colorado, En Banc.

Oct. 23, 1989.

Polidori, Rasmussen, Gerome and Jacobson, Peter L. Franklin, Lakewood, for petitioners.

Cox & Buchanan, P.C., Jonathan C.S. Cox and Vicki M. Buchanan, Denver, for respondent.

Chief Justice QUINN delivered the Opinion of the Court.

The question in this case is whether, pursuant to a written separation agreement incorporated into a decree of dissolution, a noncustodial parent's obligation of child support continues beyond the death of the custodial parent when the minor child remains in the physical custody of a person other than the noncustodial parent. The district court held that the noncustodial parent's obligation to pay child support imposed by the dissolution decree continued after the death of the custodial parent. In reversing the judgment of the district court, the court of appeals concluded that, because nothing in the decree itself provided for an alternative recipient of support payments in the event of the custodial parent's death, the obligation of a noncustodial parent to pay child support payments pursuant to the dissolution decree ceased upon the death of the custodial parent. *In re Application of Connolly*, 761 P.2d 224 (Colo.App.1988). We now reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for the purpose of amending the judgment and for further proceedings on any unresolved issues.

## I.

The essential facts are undisputed. On July 14, 1977, the marriage of Arthur Connolly (father) and Jean Connolly (mother) was dissolved by decree entered in the District Court of Adams County. Prior to the entry of the decree the Connollys had entered into a separation agreement which was incorporated by reference into the decree. The dissolution decree awarded sole custody of the Connollys' two children, Allison, then age 11, and Elizabeth, then age 7, to the mother. The decree ordered the father to pay $175 per month for each child, for a total of $350 per month as child support, and further provided as follows:

> Said child support shall continue until each of said children shall reach the age of eighteen (18) years, die, or become emancipated, except that in the event that said child or children shall be attending college on a full-time basis, [the father's] obligation to pay child support in the specified amount or such other amount as the parties shall agree upon, shall continue until said children shall reach the age of twenty-one (21) years.

On October 2, 1978, the mother consented to the father's assumption of temporary custody of Allison and also consented to a reduction of child support from $350 per month for the two children to $175 per month for Elizabeth, who remained in the custody of the mother. Soon after this temporary change of custody Allison began residing with various relatives and friends, and the father paid $175 per month as child support to the persons with whom she lived.

The mother died on February 28, 1983. Prior to her death the mother, along with her daughter Elizabeth, had lived with Laura and Danny Abrams for approximately two years. In her last will the mother designated Laura Abrams as Elizabeth's guardian. At the time of her mother's death Elizabeth moved to her father's home for approximately five weeks, but because this arrangement proved unworkable she then moved to the Abrams' home.

In November 1984 the Abrams, who were represented by counsel, filed in the District Court of Adams County a motion to intervene in the Connolly dissolution action. Although the Abrams did not expressly designate themselves as next friends of Elizabeth, they clearly indicated that they were requesting permission to intervene at the request of and on behalf of Elizabeth. The Abrams requested that they be granted physical custody of Elizabeth, that the father be ordered to pay child support arrearages for Elizabeth that had accrued since April 1983, that the father make future child support payments to the Abrams on behalf of Elizabeth, and that the father pay the Abrams' attorney fees and court costs in connection with the instant proceeding. In response to the Abrams' motion the father filed a petition for writ of habeas corpus in the District Court of Jefferson County, in which he sought custody of Elizabeth. The Abrams and the father then filed a joint stipulation for a change of venue to the District Court of Jefferson County, where all claims were subsequently consolidated for hearing. The district court permitted the Abrams to intervene in the Connolly dissolution action and appointed an attorney as guardian ad litem for Elizabeth.

The father and the Abrams reached a stipulation on temporary custody and future child support for Elizabeth. The stipulation granted the Abrams temporary custody of Elizabeth and required the father to pay future child support to the Abrams for the benefit of Elizabeth, and postponed for a future hearing the Abrams' request for permanent custody of Elizabeth. The stipulation was approved by Elizabeth's guardian ad litem and by the court. The issue not resolved by the stipulation was whether the father was liable for past child support payments during the period when Elizabeth, following her mother's death, resided with the Abrams.

The district court conducted a hearing on the issue of past child support and resolved it against the father.[1] Remarking that a

---

1. During the hearing the father, a stockbroker with an annual gross income of $180,000 or

parent has a continuing duty to support his or her children and that the children have a concomitant right to child support from the parent, and that a parent cannot modify or terminate the duty of child support without a court order, the district court concluded that a non-custodial parent's obligation to provide child support continues beyond the death of the custodial parent and that the father's obligation to pay child support imposed by the dissolution decree survived the death of the mother. The district court accordingly ordered the father to pay child support arrearages in the amount of $4,200 and twenty-five percent of the Abrams' attorney fees, and directed the entry of judgment on the Abrams' claim for child support arrearages. The judgment did not indicate whether the father should satisfy the judgment by paying the $4,200 to the Abrams for the use and benefit of Elizabeth or to pay that sum directly to Elizabeth. The court certified its ruling as an appealable judgment for purposes of C.R. C.P. 54(b).

The father appealed the judgment to the court of appeals. A divided panel of the court of appeals reversed that part of the judgment ordering the father to pay the arrearages for Elizabeth which had accrued subsequent to the mother's death. After noting that the dissolution decree contained no provision for an alternative recipient of child support payments in case

of the mother's death, the majority held that, "absent some type of provision or court directive to the contrary, the father's duty of support *pursuant to the decree* terminated upon the mother's death, although his common law and statutory duty of support continued." *In re Application of Connolly,* 761 P.2d at 226 (emphasis in original). Consequently, according to the majority, neither Elizabeth nor the Abrams, acting on her behalf, had a "claim of right" to intervene in the Adams County dissolution action for those child support arrearages which had accrued subsequent to the death of the mother.[2] Judge Metzger dissented, reasoning that since the father had taken no action to modify or terminate his child support obligation, he was liable to Elizabeth for child support payments which had accrued subsequent to the mother's death. 761 P.2d at 227. To hold otherwise, according to Judge Metzger, would permit the father "to escape his support obligation by contending that his minor children were required to take legal action to ensure that the father fulfilled his duty to them." *Id.*

We granted the Abrams' petition for certiorari in order to consider whether, under the circumstances of this case, the father's obligation to pay child support for the benefit of Elizabeth continued beyond the death of the mother.[3] In resolving this

more, testified that after the mother's death he assigned Elizabeth's social security benefits to the Abrams. So far as we can determine from the record, however, those benefits were intended to provide Elizabeth some of the support that she otherwise would have received from her mother if her mother had not died. The father's assignment of these benefits, therefore, was not a valid substitute for his child support obligation under the dissolution decree and did not relieve him of that obligation.

2. Because of its rejection of the Abrams' claim for past child support on behalf of Elizabeth, the court of appeals found it unnecessary to decide whether the Abrams had either a valid common law claim for family necessities, or a statutory claim under section 14–6–110, 6B C.R.S. (1987), which imposes joint and several liability upon the husband and wife for family expenses and the education of the children. The court of appeals also found it unnecessary to consider whether section 14–10–116, 6B

C.R.S. (1987), which permits a court to appoint an attorney to represent a minor or dependent child with respect to child support, limits the right to bring an action for child support arrearages to a guardian ad litem duly appointed pursuant to this statute.

3. After her mother's death in 1983, Allison Connolly, who was then seventeen years of age, moved into the home of the guardian specified in her mother's will. The Abrams moved to intervene in the Adams County dissolution action on behalf of Allison, seeking accrued and future child support from her father and payments for medical bills, health insurance, and educational expenses. This claim was transferred to the District Court of Jefferson County and was consolidated for hearing with the Abrams' claim on behalf of Elizabeth. The district court entered judgment against the father for past child support arrearages for the benefit of Allison in the amount of $4,200, ordered the father to pay child support to Allison until her

question we will first address whether the obligation of a noncustodial parent to pay child support pursuant to a dissolution decree continues beyond the death of the custodial parent, and then, if such obligation does continue, whether the district court properly permitted the Abrams to intervene on behalf of the minor child for the purpose of seeking child support arrearages which had accrued subsequent to the mother's death.

## II.

In reversing the district court's judgment, the court of appeals held that the father's duty to pay child support for the benefit of Elizabeth terminated upon the death of the mother. In so holding, the court of appeals emphasized that the decree did not provide "for an alternative recipient of support payments in case of the mother's death," 761 P.2d at 226, citing in this respect section 14–10–117(1), 6B C.R.S. (1987) which states that the court, upon its own motion or upon motion of either party, may order support payments to be made to the clerk of the court, as trustee, for remittance to persons entitled to receive the payments. We reject this analysis. Neither section 14–10–117(1) nor any other provision of the Uniform Dissolution of Marriage Act, §§ 14–10–101 to 14–10–133, 6B C.R.S. (1987 & 1988 Supp.) [hereinafter UDMA], requires a minor child to seek a court order authorizing the noncustodial parent's child support payments to be made to the clerk of the court. Nor is there any suggestion in the UDMA that the minor child's failure to take such action will result in the termination of the noncus-todial parent's child support obligations set forth in the dissolution decree. On the contrary, an examination of the purpose and structure of the UDMA leads us to conclude that a noncustodial parent's child support obligation incorporated into a decree of dissolution does survive the death of the custodial parent.

### A.

In addition to promoting an amicable settlement of marital disputes, the UDMA has as one of its underlying purposes the mitigation of "potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 14–10–102(2), 6B C.R.S. (1987). In keeping with this purpose, section 14–10–115(1), 6B C.R.S. (1987), authorizes a court to order "either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for [the child's] support." In the interest of assisting the court in determining an appropriate level of child support, the statutory scheme contains a schedule of basic child support obligations, § 14–10–115(10)(b), 6B C.R.S. (1987), which schedule constitutes "a rebuttable presumption for the establishment or modification of the amount of child support." § 14–10–115(3)(a), 6B C.R.S. (1987). There is a further statutory presumption that the custodial parent will spend his or her "total child support obligation directly on the children." § 14–10–115(14)(a), 6B C.R.S. (1987). A corollary of this latter presumption is the proposition, consistent with Colorado case law, that the custodial parent will utilize the noncustodial parent's support obligation in providing for the

twenty-first birthday, and also ordered the father to pay Allison's attorney fees. The court of appeals reversed the judgment in favor of Allison, concluding that the record established her emancipation as a matter of law since the time of her mother's death. In so concluding the court stated:

> After her mother's death, [Allison] went to live with her father for approximately one month before she left his home. She left of her own volition and rented an apartment by herself. She then commenced working at two separate jobs. Although her income was not substantial, the record shows that she was at all times in full control of her earnings, and she paid all her own bills, although she was partially dependent on financial support from other persons. She admitted that she was not under the control of her father and also that she never sought his financial assistance. Although her lifestyle at age nineteen was not that which she desired, the pertinent circumstances show that for purposes of the arrearages sought here, as well as the future payments ordered by the court, she was emancipated as a matter of law.

761 P.2d at 226. The petition for a writ of certiorari was not directed to this aspect of the court of appeals' opinion, and we do not discuss it in our opinion.

needs of a minor child. *See Brown v. Brown*, 183 Colo. 356, 516 P.2d 1129 (1973) (custodial mother entitled to child support payments only when children are actually living with her and supported by her). These provisions make clear that a child support order is calculated to serve the best interests of the child and not to create a windfall for a parent.

Moreover, the UDMA prohibits a parent from unilaterally terminating or modifying a child support obligation incorporated into a decree of dissolution. Section 14–10–122(1)(a), 6B C.R.S. (1987), unequivocally states that "the provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of changed circumstances that are substantial and continuing." The provision is obviously intended to require a noncustodial parent under a child support obligation to resort to the court when the noncustodial parent believes that modification of child support might be justified. When, therefore, the custodial parent dies and the noncustodial parent does not assume physical custody of a child, it is incumbent upon the noncustodial parent to file a motion for permission to make child support payments to the clerk of the court for remittance to the present custodian of the child, *see* § 14–10–117(1), 6B C.R.S. (1987), or directly to the child's present custodian.[4]

■ In concluding that the father's obligation to pay child support in àccordance with the dissolution decree terminated upon the death of the mother, the court of appeals relied on the case of *Ross v. Azcarate*, 39 Wash.App. 245, 692 P.2d 897 (1984). In *Ross*, the Washington Court of Appeals held that a child's grandmother, who upon the mother's death had been appointed legal guardian for the child, had no right to enforce the child support obligation of a dissolution decree against the father. The *Ross* court based its holding on the principle that "when [the mother]

died her rights to future payments under the support order, being personal to her, perished with her." 692 P.2d at 898.

The *Ross* decision is contrary to Colorado law, which clearly holds that a child has a legal right to support from both parents and that both parents have a continuing duty to provide reasonable support for the child. *McQuade v. McQuade*, 145 Colo. 218, 358 P.2d 470 (1960); *see also McQuade v. McQuade*, 144 Colo. 11, 354 P.2d 597 (1960). Furthermore, the child's right to support can be litigated and resolved in an action separate and apart from a dissolution proceeding. *See* § 14–10–115(1), 6B C.R.S. (1987) (court authorized to order parents to pay reasonable child support in a proceeding for child support without regard to whether dissolution petition is filed); *Scheer v. District Court*, 147 Colo. 265, 363 P.2d 1059 (1961) (pendency of divorce action did not preclude proceeding for child support under Reciprocal Support Act, the court acknowledging that question of child support can be litigated separate and apart from divorce proceeding).

The effect of the court of appeals' holding in this case is to permit a noncustodial parent to unilaterally terminate a child support obligation without obtaining a court order of modification pursuant to section 14–10–122(1)(a), 6B C.R.S. (1987). Permitting a noncustodial parent to disregard the statutory requirement of section 14–10–122(1)(a) and to unilaterally terminate or reduce a child support obligation upon the death of the custodial parent results in exacerbating rather than mitigating the potential harm to the child resulting from the dissolution decree. We thus hold that when, as here, a noncustodial parent's child support obligation is incorporated into a dissolution decree entered under the UDMA, and the custodial parent dies and the child is not in the physical custody of the noncustodial parent, the child support obligation of the noncustodial parent continues beyond the death of the custodial

---

4. Section 14–10–122(1)(c), 6B C.R.S. (1988 Supp.), states that a child support obligation incorporated into a dissolution decree becomes a final money judgment "when it is due and not paid."

parent in accordance with the terms of the dissolution decree.

### B.

The father advances two arguments to support a contrary holding, which we address separately but find unavailing.

### 1.

The father's first argument centers on section 14–10–122(3), 6B C.R.S. (1987), which states:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child *but not by the death of the parent obligated to support the child.* When a parent obligated to pay support dies, the amount of support may be modified, revoked, or commuted to a lump-sum payment, to the extent just and appropriate in the circumstances. (Emphasis added).

The father contends that since this statute expressly provides that child support payments are not terminated "by the death of a parent obligated to support the child," the legislature must have intended to terminate a noncustodial parent's obligation to pay child support upon the death of the custodial parent to whom the payments were to be made under the dissolution decree. In our view, such a reading of section 14–10–122(3) is fundamentally flawed.

Section 14–10–122(3) plainly sets forth only one condition for the termination of a child support obligation—the emancipation of the child. The statutory language does not specify any other condition which allows a parent, whether custodial or noncustodial, to unilaterally terminate or modify a child support obligation. On the contrary, the statute states that the death of a parent obligated to pay child support does not, by that very fact, terminate the child support obligation of that parent. Rather, under the plain terms of the statute, such death merely permits the court, "to the extent just and appropriate in the circumstances," to modify, commute to a lump-sum payment, or revoke the child support obligation of that parent.[5] In light of the fact that both a custodial and noncustodial parent are obliged to support a minor child, it would require a quantum leap to read into section 14–10–122(3) the proposition that the death of a custodial parent somehow terminates the noncustodial parent's child support obligation under a dissolution decree. We decline to adopt such a construction.

### 2.

The father next argues that upon the mother's death he immediately became vested with custody of Elizabeth and that his support obligation was thereafter grounded in the common law rather than in the dissolution decree. We reject this argument as proceeding from two erroneous assumptions.

■ The first erroneous assumption is that the death of the custodial parent automatically vests the noncustodial parent with custody. The long-standing principle of Colorado law is that the best interests of the child are the overriding considerations in matters of child custody. *E.g., Root v. Allen,* 151 Colo. 311, 377 P.2d 117 (1962); *Jensen v. Jensen,* 142 Colo. 420, 351 P.2d 387 (1960); *Miller v. Miller,* 129 Colo. 462, 271 P.2d 411 (1954). Although there is a presumption that a natural parent has a first and prior right to custody of his or her child, the presumption may be rebutted by evidence establishing that the welfare of the child would be promoted by awarding custody to a nonparent. *E.g., Root,* 151

---

**5.** We acknowledged in *Icke v. Icke,* 189 Colo. 319, 540 P.2d 1076 (1975), that one of the effects of section 14–10–122(3), 6B C.R.S. (1987), is to invalidate our pre-UDMA decision in *Laws v. Laws,* 164 Colo. 80, 432 P.2d 632 (1967), which held that a court's authority to order a noncustodial parent to support his minor children did not encompass the power to compel the parent to maintain a life insurance policy with the children as beneficiaries. The effect of section 14–10–122(3), as we acknowledged in *Icke,* is to expand "the legal obligation of the parent of a minor child entitled to receive support pursuant to a dissolution of marriage decree" by making clear that, unless otherwise provided, "the obligation to support minor children survives the death of the parent." *Id.* 189 Colo. at 320, 540 P.2d at 1077.

Colo. 311, 377 P.2d 117; *Coulter v. Coulter*, 141 Colo. 237, 347 P.2d 492 (1959); *see also Rippere v. Rippere*, 157 Colo. 29, 400 P.2d 920 (1965). Upon the death of a divorced custodial parent, therefore, the district court retains authority to enter further orders on legal custody of the minor child, even if the surviving parent has assumed physical custody of the child subsequent to the death of the custodial parent. *See* § 14–10–123(1)(b), 6B C.R.S. (1987) (authorizing nonparent to file custody petition under certain circumstances).

The second erroneous assumption is that the death of the custodial parent terminates the noncustodial parent's child support obligation set forth in a dissolution decree. As we previously discussed in Part II(B)(1), *supra*, nothing in the UDMA suggests such a result. We thus reject the father's argument that upon the mother's death he was automatically vested with custody of Elizabeth and was thereby relieved of his child support obligation under the dissolution decree.

### III.

We are left then to consider whether the Abrams could properly intervene in the dissolution action on behalf of the minor child for the purpose of seeking a judgment for child support arrearages that accrued since the death of Elizabeth's mother. The court of appeals held that "none of the parties here had a claim of right to intervene in the dissolution action to seek arrearages of child support alleged to have accrued pursuant to the 1977 decree following the mother's death." 761 P.2d at 226. We conclude that the court of appeals erred in so holding.

Rule 17(c) of the Colorado Rules of Civil Procedure provides a court with the procedural means for enforcing a child's legal claim against another. The rule states that "[i]f an infant or incompetent person does not have a duly appointed representative, or such representative fails to act, [the infant] may sue by [her] next friend or by a

guardian ad litem." A next friend is one who, without necessarily being appointed guardian, aids the child in the assertion of the child's rights against another. *Southard by and through Southard v. Miles*, 714 P.2d 891, 900 (Colo.1986); *Antonopoulos v. Town of Telluride*, 187 Colo. 392, 399, 532 P.2d 346, 350 (1975). The real party in interest is the child for whose benefit the suit has been brought. *Black by and through Bayless v. Cullar*, 665 P.2d 1029, 1031 (Colo.App.1983).

■ Courts are charged with the responsibility to take special care in protecting the rights of minor children, *see Hutchinson v. McLaughlin*, 15 Colo. 492, 495, 25 P. 317, 318 (1890), and, in keeping with that responsibility, C.R.C.P. 17(c) expressly authorizes a court to "make such order as it deems proper for the protection of the infant." When, therefore, a minor child's claim for child support from a noncustodial parent is brought to the attention of the court by an adult acting on behalf of the child, the court may permit the adult to proceed with the action as next friend of the child pursuant to C.R.C.P. 17(c).[6] Any judgment for past child support should be entered in favor of the child, since it is the child's entitlement to support, not the next friend's, which is the legal predicate for the judgment. A court should supplement the judgment with appropriate orders calculated to ensure that any monies received in satisfaction of the judgment will be utilized for the use and benefit of the child.

■ In this case, although the Abrams did not designate themselves as next friends of Elizabeth in their motion to intervene, the record clearly shows that the Abrams' claim for child support arrearages was made at the request of and on behalf of Elizabeth. The substance of their claim was to obtain on behalf of Elizabeth those child support arrearages which were due from the father under the dissolution decree, and both the district court and the father treated the Abrams as intervenors

---

6. A court also is authorized to appoint an attorney as guardian ad litem, as it did in this case, to represent the interests of the child with re-

spect to custody and support. § 14–10–117, 6B C.R.S. (1987).

on behalf of Elizabeth. Moreover, the father's defense to the Abrams' claim was based on his assertion that the mother's death terminated his child support obligation set forth in the dissolution decree, and not on the proposition that the Abrams were not specifically designated as next friends of Elizabeth in their motion to intervene. In rejecting the father's defense, the district court emphasized that a minor child has a right to child support from a parent, and then entered a money judgment against the father in the precise amount of the child support arrearages that were due but not paid by the father for the benefit of the child.

The state of the record in this case clearly demonstrates that the Abrams and the father, as well as the court, treated the Abrams' claim for past child support as a claim brought by them as next friends of Elizabeth. The judgment in this case, therefore, should have been entered in favor of Elizabeth Connolly, a minor, so as to conform to the issues actually tried and resolved. *See* C.R.C.P. 15(b) (issues not raised by pleadings but tried by implied consent of parties shall be treated in all respects as if they had been raised in pleadings). In light of the fact that the case must be returned to the district court for further proceedings on the Abrams' petition for permanent custody, we direct the district court to amend the judgment, pursuant to C.R.C.P. 15(b), so as to reflect that it is entered in favor of Elizabeth Connolly, a minor, and also to enter appropriate orders, pursuant to C.R.C.P. 17(c), for the purpose of ensuring that any monies paid in satisfaction of the judgment will be utilized for the use and benefit of the minor child.[7]

## IV.

In summary, we hold that when, as here, a dissolution decree entered pursuant to the UDMA orders a noncustodial parent to pay child support on behalf of a minor child, such obligation continues beyond the death of the custodial parent when the minor child remains in the physical custody of a person other than the custodial parent, and that the minor child, suing by a next friend, may enforce its right to child support and may recover from the noncustodial parent a judgment for child support arrearages which have accrued since the death of the custodial parent. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to return the case to the district court for the purpose of amending the judgment in accordance with the views herein expressed and for further proceedings on any unresolved issues.

---

7. There is no question that the district court had express statutory authority to order the father to pay the Abrams' attorney fees and court costs pursuant to section 14–10–119, 6A C.R.S. (1987), and no issue is raised here on that aspect of the judgment.