T.C. Memo. 1999-273


UNITED STATES TAX COURT


CHERYL J. MILLER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN H. LOVEJOY, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 8094-97, 8158-97.      Filed August 12, 1999.


William C. Waller, Jr., for petitioner in docket
No. 8094-97.

Thomas G. Hodel, for petitioner in docket No. 8158-97.

Sara J. Barkley, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, Judge:  Respondent determined deficiencies in the
Federal income tax of petitioner Cheryl J. Miller, formerly

Cheryl J. Lovejoy (Ms. Miller), for the taxable years 1993 and 1994 of $8,863 and $2,766, respectively.  Respondent also determined deficiencies in the Federal income tax of petitioner John H. Lovejoy (Mr. Lovejoy) for the taxable years 1993 and 1994 of $12,018 and $5,905, respectively.

These cases have been consolidated for purposes of trial, briefing, and opinion because they involve common questions of fact and law arising from the separation and divorce of petitioners.  After concessions,[1] the issues addressed in this opinion are:

(1) Whether any part of "unallocated child support and maintenance" payments made pursuant to a State court decree is alimony deductible by the payor spouse under section 215[2] and includable in the income of the payee spouse under section 71; and

---

[1]Mr. Lovejoy has conceded that a State tax refund of $175 is includable in his gross income for the taxable year 1993. Respondent has conceded that Ms. Miller is entitled to claim additional medical expenses for the taxable year 1993 in the amount of $1,033 before application of the limits of sec. 213(a).

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

(2) whether any part of "unallocated child support and maintenance" payments made pursuant to a State court decree constitutes child support under section 71(c).[3]

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated pursuant to Rule 91. The parties' stipulations of fact are incorporated herein by reference and are found as facts in these cases.

Petitioners Cheryl J. Miller and John H. Lovejoy resided in Colorado during the years in issue and when the petitions in these consolidated cases were filed.

Petitioners were married on August 30, 1970. They had two children during their marriage--Krista Holly Lovejoy (Krista), born on January 8, 1977, and Dean Ross Lovejoy (Dean), born on May 10, 1980 (the children).

In May 1992, petitioners separated. Ms. Miller remained in the family home, and Mr. Lovejoy moved into a separate residence. Mr. Lovejoy and Ms. Miller maintained separate residences throughout 1993 and 1994 and were not members of the same household at any time during those years.

---

[3]The only other issues raised by the notices of deficiency or the pleadings require a determination of which petitioner is entitled to claim the dependency exemptions for the minor children for the years at issue or are computational. The dependency exemption issue will be addressed separately if it is not resolved by agreement of the parties.

Unallocated Child Support and Maintenance Payments

Shortly after petitioners separated, Ms. Miller filed a "Petition for Dissolution of Marriage" seeking, inter alia, a divorce, temporary and permanent maintenance, and child support (the divorce case).  On August 13, 1992, nunc pro tunc July 27, 1992, the Denver (Colorado) District Court (the State court) signed Temporary Orders[4] in the divorce case that incorporated stipulations of the parties.  The relevant portions of the Temporary Orders provided:

> 1.  The parties shall share the joint custody of their children, Krista Holly Lovejoy and Dean Ross Lovejoy, with * * * [Ms. Miller] designated as the primary residential custodian for the children. * * *
>
>      *       *       *       *       *       *       *
>
> 3.  As temporary support, * * * [Mr. Lovejoy] shall pay * * * [Ms. Miller] unallocated child support and maintenance in an amount equal to fifty-five percent (55%) of his net income * * *.  * * * Payments shall be due on each bi-weekly pay day of * * * [Mr. Lovejoy] commencing immediately after the hearing herein and continuing until further Order of Court.
>
> 4.  * * * [Mr. Lovejoy's] temporary support payments herein shall include his contributions toward the son's attendance at Denver Academy and toward the skating activities of the daughter. * * *

The Temporary Orders did not state how petitioners were to treat the payments for Federal income tax purposes.  The Temporary

---

[4]"Temporary Orders" may provide for temporary payment of debts, use of property, custody, maintenance, child support, or attorney's fees during the pendency of divorce or separation proceedings.  Colo. Rev. Stat. sec. 14-10-108 (1998).

Orders did not specify what portion, if any, of the "unallocated child support and maintenance" payments (unallocated family support payments) constituted child support. The Temporary Orders did not include any contingencies related to the children that would reduce or terminate the payments or any portion thereof.

On January 24, 1994, nunc pro tunc November 12, 1993, the State court entered orders (the Permanent Orders) granting Ms. Miller sole custody of the children. The Permanent Orders also provided:

CHILD SUPPORT

For purposes of calculating child support according to the guidelines, the Court finds that * * * [Mr. Lovejoy's] gross income is $8,500.00 per month.

\* \* \* \* \* \* \*

The Court further finds that * * * [Ms. Miller's] gross income is $571.00 per month, with her net monthly income being $404.00. * * * [Ms. Miller's] income for 1987 was over $60,000, for 1988, $51,000, for 1989, $74,000, for 1990 $28,000, 1991, $6,000, and 1992, $12,000. The Court also finds that * * * [Ms. Miller] received for each of those years, except 1992, a director's fee of $3,000.00.

The Court further finds that * * * [Ms. Miller's] health problems and those of the minor child, Dean, have affected her ability to work more hours and increase her income, and the Court believes that the conclusion of this divorce action will aid in improving her health problems and those of the minor child, thereby freeing up * * * [Ms. Miller's] time to work more hours and increase her income * * *. The Court, accordingly, imputes income to * * * [Ms. Miller] of

$2,000.00 per month, such income to begin, for purposes of computation of child support, March 1, 1994.

* * * * * * *

The Court orders * * * [Mr. Lovejoy] to continue to pay the sum of $3,127.00 per month as ordered under Temporary Orders until March 1, 1994.  This amount shall be paid in equal installments on the 15th and 30th days of the month.  There shall be no gap in payments between Temporary Order [sic] and these Permanent Orders.  Thereafter, child support shall be calculated according to the guidelines.

The Court orders * * * [Mr. Lovejoy] to pay to * * * [Ms. Miller] the sum of $1,900.00 as and for child support, plus 69.5% of work related day care, net of federal tax credit, commencing March 1, 1994. * * *

* * * * * * *

MAINTENANCE

The Court finds that * * * [Ms. Miller], at this time, is not self-supporting * * *.  * * *  The Court orders * * * [Mr. Lovejoy] to pay * * * [Ms. Miller] an additional $200.00 as maintenance, in addition to the $3,127.00 paid under Temporary Orders, and that such $200.00 be effective commencing December 1, 1993 until March 1, 1994.

The Court orders that there will be no permanent maintenance.  Commencing March 1, 1994, * * * [Mr. Lovejoy] shall pay to * * * [Ms. Miller] as maintenance the sum of $1,200.00 for a period of two years.  Then maintenance will be reduced by 50%.  If child support for some reason should decrease during that two years, the maintenance amount will not change.  * * * at the end of six years, maintenance terminates.

The Court orders that maintenance shall be taxable to * * * [Ms. Miller] and deductible by * * * [Mr. Lovejoy].

Neither the Temporary Orders nor the Permanent Orders provided for any payment as a substitute for the unallocated family support payments in the event of Ms. Miller's death.

From January 1 to November 11, 1993, Mr. Lovejoy paid unallocated family support to Ms. Miller of $32,789 pursuant to the Temporary Orders. From November 12 to December 31, 1993, Mr. Lovejoy paid $5,203 in unallocated family support and $200 in maintenance to Ms. Miller pursuant to the Permanent Orders. On his 1993 Federal income tax return, Mr. Lovejoy claimed alimony deductions for his payments of $37,992. On her Federal income tax return for 1993, Ms. Miller included only the $200 of maintenance required by the Permanent Orders in her gross income.

From January 1 to February 28, 1994, Mr. Lovejoy made payments to Ms. Miller of $6,654. Under the terms of the Permanent Orders, $400 of this amount was maintenance, and $6,254 was unallocated family support. From March 1 to December 31, 1994, Mr. Lovejoy made payments to Ms. Miller of $28,070. Of this amount, $19,000 was child support, and $9,070 was maintenance. On his 1994 tax return, Mr. Lovejoy claimed $18,656 as an alimony deduction. On her 1994 tax return, Ms. Miller reported alimony income of $9,448.[5]

_____

[5]Most of the inconsistency in reporting is explained by petitioners' inconsistent treatment of the unallocated family support payments.

The Notices of Deficiency

Respondent issued separate notices of deficiency to Ms. Miller and Mr. Lovejoy. In Ms. Miller's notice, respondent proposed an adjustment increasing Ms. Miller's income by the amount of unallocated family support paid to her in 1993 and 1994. In Mr. Lovejoy's notice, respondent disallowed that part of Mr. Lovejoy's alimony deduction attributable to the unallocated family support paid by him in 1993 and 1994.

OPINION

Classification of Unallocated Family Support Payments

We must decide whether all or any part of the unallocated family support payments made by Mr. Lovejoy to Ms. Miller qualified as (1) alimony includable in the income of the payee spouse under section 71 and deductible by the payor spouse under section 215, or (2) child support excludable from the income of the payee spouse under section 71(c) and nondeductible by the payor spouse.

In this case, the Temporary Orders, incorporating the stipulation of the parties, imposed an obligation on Mr. Lovejoy to pay a percentage of his income as family support. This family support obligation was characterized as "unallocated child support and maintenance" by the State court. We are satisfied, on the basis of our review of the record, that the required payments were intended to cover both Mr. Lovejoy's obligation to

support his minor children and his obligation to pay maintenance to Ms. Miller.  However, whether an unallocated payment combining spousal support and child support can be allocated for Federal income tax purposes depends upon whether the requirements of section 71(b) and (c) are met.  We turn first to the requirements of section 71(b) to test the unallocated family support payments for alimony.

Testing Unallocated Family Support Payments for Alimony

In order for any part of an unallocated family support payment to qualify as alimony, the payment must satisfy the requirements of section 71(b).  Section 71(b)(1) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

0                      (D) there is no liability to make any
                 such payment for any period after the death
                 of the payee spouse and there is no liability
                 to make any payment (in cash or property) as
                 a substitute for such payments after the
                 death of the payee spouse.

The "divorce or separation instrument" to which section

71(b)(1)(A) refers includes "a decree of divorce or separate

maintenance", sec. 71(b)(2)(A), or "a decree * * * requiring a

spouse to make payments for the support or maintenance of the

other spouse", sec. 71(b)(2)(C).

The parties agree that the unallocated family support

payments at issue in this case satisfy all of the requirements

set forth in section 71(b)(1)(A) and (C).  The parties disagree,

however, as to whether the requirements of section 71(b)(1)(D)

and (B) have been met.

We turn first to the termination requirement of section

71(b)(1)(D).

Although section 71(b)(1)(D) requires that there must be no

liability to make alimony or separate maintenance payments for

any period after the death of the payee spouse, the divorce or

separation agreement need not expressly state that the payment

obligation terminates upon the death of the payee spouse if

termination would occur by operation of State law.  See Notice

87-9, 1987-1 C.B. 421, 422.  In this case, because the State

court decrees are silent on the issue, we look to Colorado law[6] in order to determine whether Mr. Lovejoy's legal duty to pay unallocated family support would terminate upon Ms. Miller's death.  Cf. Brown v. Commissioner, 50 T.C. 865 (1968), affd. per curiam 415 F.2d 310 (4th Cir. 1969).

Colorado has enacted the Uniform Dissolution of Marriage Act (UDMA), Colo. Rev. Stat. secs. 14-10-101 through 14-10-133 (1998).  As enacted in Colorado, the UDMA specifically authorizes two types of support orders:  Maintenance and child support.  See Colo. Rev. Stat. secs. 14-10-114, 14-10-115.  The term "maintenance" is defined to include the term "alimony".  Colo. Rev. Stat. sec. 14-10-103(1).

Under the UDMA as enacted in Colorado, the obligation to pay future maintenance terminates upon the death of either party or the remarriage of either spouse, unless otherwise agreed in writing or expressly provided in the decree.  See Colo. Rev. Stat. sec. 14-10-122(2); Menor v. Menor, 391 P.2d 473, 477 (Colo. 1964).  On the other hand, the obligation to pay child support is

---

[6]Because Mr. Lovejoy and Ms. Miller reside in Colorado, they are bound by Colorado law on the issue of when the unallocated child support and maintenance payments terminate.  See Napolitano v. Napolitano, 732 P.2d 245 (Colo. Ct. App. 1986); McDonald v. McDonald, 634 P.2d 1031 (Colo. Ct. App. 1981);.  Under Colorado law, support orders are governed by the law of the State that issued the orders.  See Colo. Rev. Stat. secs. 14-5-303, 14-5-604 (1998).

"terminated by emancipation of the child but not by the death of a parent obligated to support the child" unless otherwise agreed in writing or expressly provided in the decree. Colo. Rev. Stat. sec. 14-10-122(3); see also Abrams v. Connolly, 781 P.2d 651, 656-657 (Colo. 1989) (the obligation to pay child support continues beyond the death of the custodial parent, at least when the noncustodial parent does not assume custody of the children following the death of the custodial parent).

We have found no specific statutory authority authorizing unallocated family support payments other than scattered references in the UDMA to "maintenance when combined with child support". See, e.g., Colo. Rev. Stat. secs. 14-14-105 (Continuing Garnishment), 14-10-122(1)(c) (Modification and Termination of Provisions for Maintenance, Support, and Property Disposition--Automatic Lien). Similarly, we have found no statute which addresses whether an obligation to pay unallocated family support terminates upon the death of the payee spouse.

Mr. Lovejoy argues that, because the Temporary Orders (and that part of the Permanent Orders dealing with the unallocated payments) did not "fix" any amounts as child support, his duty to make the unallocated family support payments would end upon Ms. Miller's death. Ms. Miller argues that, because at least some portion of each unallocated family support payment is child support, under Abrams v. Connolly, supra, some portion of each

payment would survive her death.  We reject both of these arguments and the circular reasoning on which they rely.

Unallocated family support is a technique sometimes used in domestic relations cases to encourage sensible cash-flow planning between separated spouses.[7]  If used correctly, the technique enables the parties to achieve a higher net transfer of funds to the payee spouse because the payor spouse, who is generally in a higher tax bracket, reaps an economic benefit from the larger tax deduction obtained when unallocated family support payments are structured to be deductible as alimony.  See generally H. Rept. 98-432 (Part 2), at 1495 (1984).  These unallocated payments, while typically temporary, can facilitate the economic transition that must occur as a result of a divorce or separation, provided the parties understand and agree to the tax consequences.

In this case, the Temporary Orders are silent regarding the tax consequences of the unallocated family support payments. Although petitioners could have agreed to the tax consequences of the payments, they failed to do so.  See sec. 71(b)(1)(B) and (c).  Colorado's UDMA does not state expressly whether combined spousal and child support payments must terminate on the death of the payee spouse.  We must examine, therefore, whether the provisions of the UDMA applicable to temporary orders permit us

---

[7]This practice is sometimes referred to as "Lesterizing". See Commissioner v. Lester, 366 U.S. 299 (1961).

to conclude that the unallocated payments must terminate on the death of the payee spouse as required by section 71(b)(1)(D).

Under the UDMA, child support and spousal maintenance must be separately stated in a final divorce decree. See In re Huff, 834 P.2d 244, 248 (Colo. 1992) (error to incorporate an award of attorney's fees into a maintenance award, because under the UDMA, the district court is required to make separate orders regarding each element of a dissolution order). Consequently, it appears that unallocated family support payments may be used only in a written separation agreement or in temporary orders.

Since the Temporary Orders did not require Mr. Lovejoy to make separate maintenance and child support payments under the provisions of the UDMA dealing expressly with those types of payments, we conclude that the State court intended for the unallocated payments to be governed by the express terms of the Temporary Orders and the provisions of the UDMA dealing with temporary orders.

In this case, petitioners agreed to the unallocated family support payments in a stipulation which was incorporated into Temporary Orders. The Temporary Orders state that the unallocated payments must continue "until further Order of Court." Moreover, Colo. Rev. Stat. sec. 14-10-108(5)(c), dealing with temporary orders and injunctions, provides, in pertinent part, that a temporary order "Terminates when the final decree is

entered, unless continued by the court for good cause to a date certain, or when the petition for dissolution or legal separation is voluntarily dismissed."[8]

Neither the Temporary Orders nor the UDMA provides that the unallocated family support payments must terminate on the death of the payee spouse. We hold, therefore, that the unallocated payments could be terminated only by "further Order of Court" as stated in the Temporary Orders or upon the entry of the final divorce decree or voluntary dismissal of the petition for dissolution as provided in Colo. Rev. Stat. sec. 14-10-108(5)(c).

The termination requirement of section 71(b)(1)(D) is not met with respect to the unallocated family support payments at issue in this case. Since the failure to satisfy the termination requirement is fatal to Mr. Lovejoy's argument that the unallocated family support payments are alimony, we need not address whether the section 71(b)(1)(B) requirement is met. The unallocated family support payments are not includable in Ms. Miller's income under section 71 and are not deductible by Mr. Lovejoy under section 215.

---

[8]Temporary support orders further the purpose of the UDMA, to mitigate the potential harm to spouses and their children caused by the process of dissolving a marriage, by maintaining the status quo pending final disposition of dissolution proceedings. See In re Price, 727 P.2d 1073, 1076 (Colo. 1986).

Testing Unallocated Family Support Payments for Child Support

In order for any part of an unallocated family support payment to qualify as child support for Federal income tax purposes, it must satisfy the provisions of section 71(c). As a general rule, section 71(c)(1) provides that that part of any payment which the terms of the divorce or separation instrument fix as a sum payable for the support of the payor's children is not alimony under section 71.

Neither respondent nor Ms. Miller argues that any portion of the unallocated family support payments is fixed as child support and thus excludable from Ms. Miller's gross income. Instead, both respondent and Ms. Miller take the position that the payments are not alimony and, therefore, by process of elimination, the payments must be child support.

We decline to address whether the unallocated family support payments, or any part of them, qualify as child support under section 71(c). Ms. Miller has asserted that the unallocated family support payments are child support only because she wants to avoid any argument that those payments are includable in her income. Since the unallocated family support payments do not satisfy the termination requirement of section 71(b)(1)(D) and, therefore, do not qualify as alimony for Federal income tax purposes in any event, it is not necessary to decide the child support issue. No other ground for asserting that the payments

are includable in Ms. Miller's income has been raised by respondent in this case.[9]

We have carefully considered all remaining arguments made by the parties for a result contrary to that expressed herein, and, to the extent not discussed above, find them to be irrelevant or without merit.

Conclusion

The unallocated family support payments made by Mr. Lovejoy to Ms. Miller in 1993 and 1994 are not includable in Ms. Miller's income under section 71 and are not deductible by Mr. Lovejoy under section 215.

Our holding in this opinion will be incorporated into the decisions to be entered in these cases when all other issues are resolved.

An appropriate order will
be issued.

---

[9]Respondent did not raise sec. 61 as an alternative ground for including the unallocated payments in Ms. Miller's income. See, e.g., Mass v. Commissioner, 81 T.C. 112 (1983). But cf. Gould v. Gould, 245 U.S. 151 (1917) (alimony not includable in recipient's gross income under predecessor to sec. 61). Since the issue was not raised expressly in the notices of deficiency and since all of the parties have tried this case on the assumption that only sec. 71 applies, we do not address whether family support payments not meeting the requirements of sec. 71 must be included in income under sec. 61.