REMOTE SWITCH SYSTEMS, INC., Plaintiff–Appellee,

v.

Eric DELANGIS, Defendant–Appellant.

No. 04CA0575.

Colorado Court of Appeals, Division V.

Aug. 11, 2005.

Certiorari Denied Jan. 17, 2006.

Fischer & Fischer, LLP, Erik G. Fischer, Fort Collins, Colorado, for Plaintiff–Appellee.

Schmehl Law Group, P.C., James W. Schmehl, Fort Collins, Colorado, for Defendant–Appellant.

Opinion by: Judge ROY.

Defendant, Eric DeLangis (employee), appeals the trial court's judgment finding he was not the prevailing party in this action with his former employer, Remote Switch Systems, Inc. (employer), and dismissing all claims and counterclaims except for his counterclaim for additional wages pursuant to the Colorado Wage Claim Act, § 8–4–101, et seq., C.R.S.2004. We affirm in part, reverse in part, and remand for further proceedings.

Employer is in the business of designing, producing, and marketing technology relating to remote transfer connections and switching systems. Employee was initially employed through a temporary placement agency in August 1996, on a trial basis as chief engineer. From December 1, 1996 to May 1999, however, employee was a full-time salaried employee who, as the company's new chief engineer, was responsible for overseeing the support and development of both existing and new technologies.

According to employer, at the time employee first joined the company he was presented with an employment agreement which required, as a condition of employment, that he assign to employer any rights to his inventions developed during his period of employment. The agreement also required that employee list any pre-employment inventions that should be excluded from the agreement and not disclose or use any trade secrets or confidential information of employer that he gained knowledge of during the course of his employment. The parties dispute as to whether employee ever signed the agreement.

Starting in early 1997, employee and employer's president engaged in discussions about the possible development and marketing of a new product known as Six Pack, which employee had partially developed prior to joining employer. The Six Pack product would allow a digital subscriber line (DSL) customer to utilize several different telephone and data lines connected from the customer's residence to a central telephone company office through a single DSL line. Employee and a staff of engineers commenced work on the Six Pack project in approximately August 1997 utilizing facilities and funds provided by employer.

In May 1998, employer tendered a "Strategic Business Plan" to employee outlining the company's business and marketing plan relating to the Six Pack product. Certain provisions in this plan concerning employee's compensation were not in accord with employee's previous understanding of his projected compensation package.

In May 1998, February 1999, and May 1999, employer filed patent applications naming employee as the sole inventor to protect its interest in the Six Pack technology. However, in December 1999, after the present litigation had commenced, employer filed

an additional application in which it named employer's president as a co-inventor. This last application contained only claims for inventions conceived and developed after employee joined employer's staff, and the record discloses that the claims for employee's original Six Pack invention were cancelled by employer because an examiner with the Patent and Trademark Office had rejected those claims.

Upset with his compensation package as outlined by employer, employee resigned from the company effective May 15, 1999. Contemporaneously, employer asked employee to assign the rights to the Six Pack technology and the rights to the pending patent applications pursuant to company policy, but employee refused.

In June 1999, employer filed suit against employee seeking a declaratory judgment as to the ownership of the Six Pack technology and patent applications and alleging employee's misappropriation of trade secrets and confidential information, conversion of private property, breach of fiduciary duty, and interference with a prospective economic advantage. Employee counterclaimed, alleging, among other things, unpaid wages under the Wage Claim Act.

Because of the technological complexities of the case, the trial court appointed a special master to conduct hearings, hear evidence, and issue findings of fact and conclusions of law. The special master issued a report finding, as pertinent here, that: (1) employee first conceived the original Six Pack technology prior to joining employer and owned any technology developed during that time, but employer was the owner of the technology developed after employee joined the company; (2) employee did not sign an employment agreement requiring the assignment of inventions to employer; (3) employee nonetheless had a duty to assign to employer any inventions developed after the first effective date of his full-time employment, or December 1, 1996, because he was "hired to invent"; (4) as a matter of fairness and equity, employer was entitled to use and further design "manufacturing and marketing systems employing" employee's original Six Pack technology because the technology was "implemented ... in the form of the Six Pack product using [employer's] resources"; (5) there was insufficient evidence presented establishing the existence of a binding contract as claimed by employee, and therefore, employee was not entitled to damages based on breach of contract; (6) employee was entitled to additional wages based on a company "comp time" program; and (7) there was insufficient evidence supporting employer's claim that employee breached his duty of loyalty.

The trial court entered a final judgment adopting the findings of the special master. In doing so, the trial court inexplicably dismissed all claims and counterclaims except for employee's counterclaim for additional wages. In addition, the court determined that "neither party prevailed and each is responsible for [its] own attorney fees and costs ... [and] for one-half of the Special Master's fee and related transcripts." Because employer had solely borne the special master's fee of $52,463.25, the court therefore ordered employee to pay to employer his share of the fee ($26,231.63) less the amount of the awarded wages ($8,563.70), for a final judgment in employer's favor of $17,667.93. This appeal followed.

## I.

We first review employee's assertion that the trial court erred in denying him an award of attorney fees under the former § 8–4–114 of the Wage Claim Act. We agree and remand for an award of reasonable attorney fees.

At the time the trial court entered final judgment, § 8–4–114 provided:

Whenever it [is] necessary for an employee to commence a civil action for the recovery or collection of wages and penalties due as provided by sections [8–4–104] and [8–4–105], the judgment in such action shall include a reasonable attorney fee in favor of the winning party, to be taxed as part of the costs of the action.

Colo. Sess. Laws 1967, ch. 398, § 80–8–14 at 861 (formerly codified at § 8–4–114; repealed Colo. Sess. Laws 2003, ch. 286, § 2 at 1863).

Employee asserts that under this provision, he was entitled to an award of attorney fees because he was the prevailing party on his Wage Claim Act claim. Employer disagrees, arguing that the use of the word "commence" in the quoted provision precludes employee from receiving an award because one who counterclaims in a lawsuit necessarily cannot be considered one who "commence[s] a civil action."

 The interpretation of a statute is a question of law that we review de novo. *McCall v. Meyers,* 94 P.3d 1271 (Colo.App. 2004). In construing a statute, we must give effect to the intent of the General Assembly by first examining the language of the statute and giving its terms their plain and ordinary meaning. If the statute is unambiguous, we need look no further. *Hensley v. Tri–QSI Denver Corp.,* 98 P.3d 965 (Colo. App.2004).

 Upon review, we conclude employee's counterclaim under the Wage Claim Act qualifies as a "civil action" that he properly "commence[d]" within the meaning of the former § 8–4–114. In so concluding, we find persuasive those authorities that have determined that a counterclaim is an "action" independent of and distinct from the original action brought by the plaintiff. *See Int'l Bus. Lists, Ltd. v. Am. Tel. & Tel. Co.,* 878 F.Supp. 102 (N.D.Ill.1994)(counterclaim is an "action" under Illinois law); *United States v. $10,000 in U.S. Funds,* 863 F.Supp. 812, 816 (S.D.Ill.1994)(counterclaim "is an action brought by a defendant against a plaintiff"), *aff'd,* 52 F.3d 329 (7th Cir.1995); *Bird v. Coleman,* 939 P.2d 1123 (Okla.1997) (counterclaim is distinct and separate cause of action from original action); *Kaiser v. Monitrend Inv. Mgmt., Inc.,* 672 A.2d 359 (Pa.Commw.Ct.1996)(counterclaim is independent action allowing defendant right to affirmative relief from plaintiff); *see also Home Oil Co. v. Todd,* 195 Conn. 333, 487 A.2d 1095 (1985)(under Connecticut rules of practice, counterclaim, if proper, is independent action). Indeed, although we do not decide the point, employee's wage claim may be a compulsory counterclaim that must be brought here or lost. *See* C.R.C.P. 13(a); *In re Estate of Krotiuk,* 12 P.3d 302 (Colo.App. 2000).

Thus, because employee commenced an action within the meaning of the Wage Claim Act seeking additional wages owed to him, and because he prevailed in that action, we conclude that, as the "winning party" under the former § 8–4–114, he was entitled to an award of attorney fees relating to the prosecution of that counterclaim alone.

Accordingly, we remand to the trial court for a determination of the amount of attorney fees attributable to the wage claim.

## II.

Employee next contends that the trial court erred in dismissing all the claims and counterclaims in the case except for his claim brought under the Wage Claim Act without identifying any prevailing party and without issuing any findings of fact and conclusions of law concerning those claims. We disagree.

 The trial court based its rulings dismissing the claims on the report provided by the special master pursuant to C.R.C.P. 53(e). The relationship between a special master and the trial court is the same relationship that exists between the trier of fact and an appellate reviewing body. It is the special master's duty to conduct hearings, receive evidence, and listen to the testimony on the issues involved and then report his or her findings to the trial court. Only if the findings are clearly erroneous, that is, only if they are clearly unsupported by evidence in the record, may they be disturbed by the trial court. *See* C.R.C.P. 53(e)(2); *Sunshine v. Sunshine,* 30 Colo.App. 67, 488 P.2d 1131 (1971).

 Here, the trial court dismissed the claims of both parties sua sponte upon review of the special master's report and the accompanying pleadings of the parties. We review such a dismissal de novo. *Fisher v. Colo. Dep't of Corr.,* 56 P.3d 1210 (Colo.App.2002)(applying de novo review to trial court's dismissal sua sponte of inmate's action against Department of Corrections).

From our own review, we conclude that the record properly supports the dismissal of

employee's other counterclaims. The special master found that there was insufficient evidence of any contract that employer might have breached and that employer was the rightful owner of the Six Pack product as developed from the time employee joined the company. Moreover, in its order entering final judgment, the trial court concluded that "the claims set forth in [employer's] Complaint are neither groundless nor frivolous." Based on the findings of both the special master and the trial court, we conclude that employee's remaining claims were properly dismissed.

Accordingly, we perceive no error.

## III.

■ Employee also contends that the trial court erred in denying him awards for prejudgment and postjudgment interest on his Wage Act claim. We agree in part and remand for an award of prejudgment interest.

Section 5-12-102(1), C.R.S.2004, which governs the award of prejudgment interest in this instance, provides in pertinent part:

Except [in certain tort actions], when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant,

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

Here, both the special master and the trial court found that employee was entitled to an award of wages for "comp time" he earned while working for employer. Because employee was not paid those wages when he left the company, employer's withholding was wrongful. Accordingly, under § 5-12-102(1), employee is entitled to an award of prejudgment interest calculated on his award from the effective date of his resignation from the company, May 15, 1999, to the date of final judgment, February 5, 2004, and the matter must be remanded for the computation and award of such interest and the inclusion of that interest in the setoff against the special master's fee.

However, because the award of wages was set off from the greater amount that employee owed employer for the special master's fee, an award of postjudgment interest is not proper here.

## IV.

Employee further contends that the trial court erred in not designating him as the prevailing party in the case. We disagree.

■ The determination of which party prevailed is committed to the discretion of the trial court and is subject to an abuse of discretion standard of review. *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n. 6 (Colo.1994)(citing *Smith v. Freeman*, 921 F.2d 1120, 1122 (10th Cir.1990)); *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499 (Colo.App.2003). We will find an abuse of discretion only if the trial court's ruling was manifestly arbitrary, unfair, or unreasonable. *Gordon v. Boyles*, 99 P.3d 75 (Colo.App.2004)(*cert. granted* Oct. 18, 2004).

■ "A 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits sought by the litigation. The number of claims upon which a party prevails or the amount awarded for those claims is not determinative." *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo.2004) (citation omitted). Moreover, in a proper case, the trial court may rule that neither party prevailed and award no fees. *Wheeler v. T.L. Roofing, Inc., supra.*

■ We conclude that the trial court did not abuse its discretion in determining that employee was not the prevailing party in this instance. Employer requested a declaratory

judgment that it was the rightful owner of the Six Pack technology. The special master concluded that inventions conceived after the commencement of the employment relationship were the property of employer and employee was directed to assign his interest in those inventions to employer. Thus, employer was determined to be the sole owner of the technology developed through use of its resources and facilities, subject only to any patents that employee might obtain for inventions conceived prior to the commencement of the employment relationship. The trial court adopted these findings and conclusions. Therefore, employer in essence prevailed on its claim for the declaratory judgment notwithstanding the fact that the court technically and inexplicably dismissed that claim.

■ Because both parties essentially prevailed on a significant claim, we perceive no reason to disturb the trial court's ruling. In cases involving multiple claims, "where either party could arguably be considered the 'prevailing party,' the trial court is in the best position to evaluate the relative strengths and weaknesses of each party's claims, the significance of each party's successes in the context of the overall litigation, and the time devoted to each claim." *Archer v. Farmer Bros. Co., supra,* 90 P.3d at 231.

Accordingly, we find no error.

## V.

Employee next contends that the trial court erred by not awarding him attorney fees pursuant to § 13–17–101, et seq., C.R.S. 2004, on the grounds that employer's claims were frivolous and groundless and an abuse of process. We are not persuaded.

Section 13–17–102(4), C.R.S.2004, provides, in pertinent part:

The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the Colorado rules of civil procedure.... As used in this article, "lacked substantial justification" means substantially frivolous, substantially groundless, or substantially vexatious.

■ To prevail on a claim for attorney fees under § 13–17–102, the claimant has the burden of proving the claim by a preponderance of the evidence. *Elrick v. Merrill,* 10 P.3d 689 (Colo.App.2000). The decision to award fees is within the sound discretion of the trial court, and the court's denial of an award will not be disturbed absent an abuse of discretion. *Bd. of County Comm'rs v. Colo. Counties Cas. & Prop. Pool,* 888 P.2d 352 (Colo.App.1994).

■ A claim is frivolous if the proponent can present no rational argument based on the evidence or law in support of the claim. A claim is groundless if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence. *Bd. of County Comm'rs v. Eason,* 976 P.2d 271 (Colo.App.1998).

■ Among the factors that a trial court must consider in determining whether a litigant is entitled to an award of attorney fees under § 13–17–102 are: (1) the extent of any effort made to determine the validity of any action or claim before the action or claim was asserted; (2) the extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid within an action; and (3) the availability of facts to assist a party in determining the validity of a claim or defense. Section 13–17–103, C.R.S.2004; *Bilawsky v. Faseehudin,* 916 P.2d 586 (Colo. App.1995).

■ The fact that a court does not grant a party its requested relief does not make the party's claims frivolous. *Lobato v. Taylor,* 13 P.3d 821 (Colo.App.2000), *rev'd on other grounds,* 70 P.3d 1152 (Colo.2003).

Here, having reviewed the parties' arguments, the pleadings, and the report of the special master, the trial court determined that, although employer was not entitled to relief on its claims, the claims nonetheless were not frivolous or groundless. On review, we agree with the trial court and conclude

from the record that employer's claims did not lack substantial justification. In so concluding, we note, again, that employer, in fact, prevailed on its assertion concerning the ownership rights to the technology that was developed at its facilities with its resources and personnel. Thus, in our view, attorney fees under § 13–17–102 were not warranted in this instance.

## VI.

Finally, because the trial court did not err in dismissing employee's claims that employer's lawsuit was frivolous and an abuse of process, we conclude, in accordance with the trial court's determination, that punitive damages are also not available to employee in this instance.

The judgment is reversed as to the attorney fees attributable to the wage claim and prejudgment interest, and the case is remanded for further proceedings consistent with this opinion to award those fees and interest to employee. The judgment is affirmed in all other respects.

Judge DAILEY and Judge KAPELKE * concur.