24CA0251 Matter of Arredondo 11-14-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0251
Rio Grande County District Court No. 20PR1
Honorable Crista Newmyer-Olsen, Judge

---

In the Matter of Anestacio Damian Arredondo, Protected Person.

Yvonne Arredondo,

Appellant,

v.

Andres Arredondo, Guardian,

Appellee.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE BERNARD*
Welling and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

---

Erich Schwiesow, PC, Erich Schwiesow, Alamosa, Colorado, for Appellant

Brown & Brown, P.C., Daniel F. Fitzgerald, Grand Junction, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Appellants Yvonne Arredondo and her attorney, Erich Schwiesow, appeal the district court's joint and several award of attorney fees and costs to Andres Arredondo.  We affirm.

## I.     Background

¶ 2     This appeal arises out of a contested guardianship.  The ward of this guardianship, Anestacio Damian Arredondo, is a twenty-five-year-old man with severe autism.

¶ 3     Ms. Arredondo is the ward's mother.  Until fairly recently, she was the ward's primary caretaker.  But, in December 2019, she was arrested for vehicular eluding, reckless endangerment, obstructing a peace officer, resisting arrest, crimes against an at-risk adult (the ward), reckless driving, damaging a highway, and failing to drive in a single lane.

¶ 4     In January 2020, because of this arrest, the ward's sister filed a petition for guardianship in the ward's interest.  Her petition explained that the ward "is unable to do everyday tasks such as taking a shower, cooking or making any financial decisions.  He is essentially nonverbal with respect[] to a few words and simple sentences."  Ms. Arredondo filed a competing petition to become the ward's guardian.

¶ 5    After the court held a hearing on the dueling petitions, it appointed the sister to be the ward's guardian, but the ward continued to live with Ms. Arredondo.  Less than three weeks later, the sister resigned the position due to her "health plummet[ing] with the stress of having to deal with [Ms.] Arredondo."  In her resignation, the sister reported that Ms. Arredondo would be "more friendly and cooperative" if the ward's adult brother, Andres Arredondo, were to be the ward's guardian.

¶ 6    The sister's resignation prompted another round of competing petitions to become the ward's successor guardian.  Again rejecting Ms. Arredondo's candidacy, the court appointed Andres Arredondo as the successor guardian in March 2020, and we will refer to him as "the guardian" from here on out.  The ward continued to live with Ms. Arredondo, who cared for him.

¶ 7    In June 2021, the guardian filed an annual report.  In the report, among other things, he asked the court for authority to appoint a caretaker other than Ms. Arredondo for the ward.  The guardian wrote that he wanted the flexibility to "not solely [have the caretaker] be [Ms. Arredondo] . . . because [she] is difficult to work with and must constantly be asked to do things."  The guardian

added that he had difficulty in contacting Ms. Arredondo and in arranging his visitation with the ward.

¶ 8     In February 2022, the guardian filed a Motion to Clarify Guardian's Authority, which was accompanied by the guardian's affidavit. The affidavit recounted that, in December 2021, Ms. Arredondo disclosed that she had tested positive for COVID-19, yet she had initially refused to move the ward to the house of the ward's father. The ward soon tested positive for the disease.

¶ 9     The affidavit also stated that a family nurse practitioner "would not agree to be [the ward's] care provider if [Ms. Arredondo] was involved in any way due to [the practitioner's] past experience with [Ms. Arredondo], including [Ms. Arredondo's] abusive and harassing behaviors."

¶ 10    Finally, the affidavit, which was accompanied by police reports, explained how Ms. Arredondo was recently twice involved with the police. In the first incident, Ms. Arredondo took the ward to sleep on the floor of the Del Norte Sheriff's Office because Ms. Arredondo thought that she had smelled natural gas in her house. Ms. Arredondo also mentioned that she was on "meth[amphetamine] and crack [cocaine]."

¶ 11    In the second incident, which occurred on the next day, Ms. Arredondo was arrested and jailed after she had driven into a field. She told police officers who had come to the field that she "was going to kill herself" or drive her car into their cars. She was eventually arrested, and criminal charges were filed against her. (These charges were later dismissed in June 2022.)

¶ 12    Last, the guardian wrote that he had learned from his father that, about three weeks after the two incidents described above, Ms. Arredondo had tried to abduct the ward while the ward was receiving treatment at a local health clinic.

¶ 13    After reviewing the motion and the affidavit, the court issued an order giving the guardian full authority over the ward and revoking any authority that Ms. Arredondo had over the ward. The order added that Ms. Arredondo could not contact the ward's caregivers, that she could not interfere with the guardian's decisions about the ward's care, and that the guardian had full authority to remove the ward from Ms. Arredondo's care.

¶ 14    By June 2022, the guardian reported that the ward was living with the ward's father and was doing well, although he would occasionally have flashbacks to the "cruel things" that Ms.

Arredondo would say to him when he was living with her. In that report, the guardian mentioned that he might "seek fees and costs" from Ms. Arredondo and her attorney because Ms. Arredondo's "unreasonable actions" had driven up the legal costs of the guardianship.

¶ 15 Ms. Arredondo, who at this point was represented by Mr. Schwiesow, then filed three motions that formed the basis of the court's order requiring them, jointly and severally, to pay the guardian's attorney fees.

¶ 16 In November 2022, Ms. Arredondo filed the first motion, which was entitled "Petition for Removal of Guardian, or, in the Alternative, Modification of the Guardian's Authority." As grounds for the guardian's removal, the petition alleged that (1) the charges relating to the December 2021 incident had been dropped; (2) the guardian had "refused, despite countless requests, to allow [Ms. Arredondo] to visit or spend time with the ward"; (3) the ward had been left alone while in his father's care; and (4) the guardian had "spent the estate's assets on a few large ticket items of questionable value" to the ward. Based on these allegations, Ms. Arredondo asked the court to remove "the guardian in favor of [Ms. Arredondo]

or, in the alternative, . . . facilitate extended visitation between [Ms. Arredondo and the ward]."

¶ 17 In February 2023, Ms. Arredondo filed the second motion, which she called a "Forthwith Motion to Require Guardian to Disclose Caregiver and for an Order Authorizing Production of Caregiver Records." The forthwith motion to disclose asked the court to order the guardian to provide the names of the ward's health care providers for the past five years, arguing that "[t]he [g]uardian [had] placed the health of the [w]ard at issue by removing the [w]ard from Ms. Arredondo's care . . . [and by] denying visitation between the [w]ard and Ms. Arredondo." The forthwith motion also asserted that Ms. Arredondo "require[ed] the [w]ard's medical records in order to make her case at the scheduled hearing" on her petition. The court denied this request because the information she sought was protected by the physician-patient privilege, and this privilege had not been waived.

¶ 18 Finally, in April 2023, Ms. Arredondo filed the third motion, which she called a "Motion to Quash Guardian's Discovery Requests." In it, she argued that the guardian's request for discovery from her was inappropriate in this probate case and that

6

no court rule allowed it. After explaining that "[d]iscovery in probate matters is governed by Rule 40 of the Colorado Rules of Probate Procedure[,]" the court denied the motion to quash.

¶ 19    Then, beginning in July 2023, Ms. Arredondo had at least five encounters with the Monte Vista Police Department because she was allegedly harassing her neighbors. At the end of July, she was arrested and subsequently charged with attempted kidnapping of a child and felony menacing. Approximately two weeks later, she was charged with public indecency and disorderly conduct.

¶ 20    As a result of the various proceedings, the court vacated the hearing on Ms. Arredondo's petition for removal. At a status conference in late September 2023, Mr. Schwiesow told the court that he was withdrawing the petition for removal because of the pending felony charges.

¶ 21    After this, the guardian filed a "Motion for Attorney Fees, Costs, and Other Sanctions," which alleged that Ms. Arredondo's petition for removal had been "groundless, frivolous, and [filed] in bad faith." The court granted the guardian's motion in part, assessing $19,766.67 in attorney fees jointly and severally against Ms. Arredondo and Mr. Schwiesow.

7

## II. Discussion

¶ 22 Ms. Arredondo and Mr. Schwiesow contend that the court erred when it found they had acted in bad faith by filing and litigating the petition for removal, the forthwith motion, and the motion to quash, and by then ordering them, jointly and severally, to pay the guardian's attorney fees. We disagree.

### A. Standard of Review and Applicable Law

¶ 23 Whether a court should award attorney fees is a question of fact. We review a court's decision to award such fees for an abuse of discretion. *Nesbitt v. Scott*, 2019 COA 154, ¶ 16. A court abuses its discretion if its order is manifestly arbitrary, unreasonable, or unfair, or if the order is based on a misapplication or misunderstanding of the law. *Credit Serv. Co. v. Skivington*, 2020 COA 60M, ¶ 24. We will affirm a court's determination that an award of attorney fees is reasonable "unless it is patently erroneous and unsupported by the evidence." *Accetta v. Brooks Towers Residences Condo. Ass'n*, 2021 COA 147M2, ¶ 43. "The trial court must make findings sufficient to allow meaningful appellate review of an award." *Brody v. Hellman*, 167 P.3d 192, 198 (Colo. App. 2007).

¶ 24 Generally, attorney fees cannot be recovered absent an express statute, court rule, or private contract providing for them. *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1015 (Colo. 2003). But, as is relevant to this case, awards of attorney fees and costs may be granted under sections 13-17-102 and 15-10-605, C.R.S. 2024, as well as under C.R.C.P. 11.

¶ 25 Section 15-10-605(1) provides that, for any filings made under the probate code "in bad faith, the court may assess the fees and the costs, including reasonable attorney fees, incurred by the . . . affected parties in responding to the proceedings or pleadings."

¶ 26 C.R.C.P. 11(a) similarly provides that an attorney's signature on a pleading filed with the court "constitutes a certificate by him that . . . [the pleading] is well grounded in fact and is warranted by existing law or a good faith argument." Plus, "[i]f a pleading is signed in violation of this Rule" — that is, the pleading is not warranted by existing law or a good faith argument — then the court shall impose an appropriate sanction "which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading." *Id.*

¶ 27    Finally, under section 13-17-102(2), a court shall award attorney fees "against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." *See In re Marriage of Ensminger*, 209 P.3d 1163, 1165 (Colo. App. 2008).  In determining whether an award under section 13-17-102 is appropriate, trial courts are required to set forth the reasons for the award and must consider a number of factors, including, as is pertinent to our analysis, (1) "the extent of any effort made to determine the validity of any action or claim before said action or claim was asserted"; (2) "whether or not the action was prosecuted or defended, in whole or in part, in bad faith"; and (3) "whether or not issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict."  § 13-17-103(1)(a), (e), (f).

¶ 28    Although these two statutes and one court rule address somewhat different bases for ordering attorney fees and costs, they all consider court filings or arguments made in bad faith to be grounds for awarding attorney fees.  In this context, "bad faith" may include conduct that is arbitrary, abusive, stubbornly litigious, or disrespectful of the truth.  *In re Marriage of Roddy*, 2014 COA 96,

¶ 34. A claim or defense "is brought or maintained in bad faith," and therefore "lacks substantial justification[,] when it is substantially frivolous, groundless, or vexatious." *Id.* "A claim or defense is frivolous if the proponent can present no rational argument based on the evidence or the law to support the claim or defense." *Hawley v. Mowatt,* 160 P.3d 421, 427 (Colo. App. 2007). The party seeking attorney fees "has the burden of proving the claim by a preponderance of the evidence." *Remote Switch Sys., Inc. v. Delangis,* 126 P.3d 269, 275 (Colo. App. 2005).

### B. The Court's Findings

¶ 29 Ms. Arredondo and Mr. Schwiesow challenge the court's order assessing attorney fees against them jointly and severally. Notably, they do not contest the reasonableness of the court's lodestar calculations. Rather, they contend that the record before the court "does not support the conclusion that any of the complained of pleadings were filed in bad faith." Accordingly, we will only address that issue.

¶ 30 We next summarize the court's findings of bad faith concerning the three motions that we described above: the petition

11

for removal, the forthwith motion to disclose, and the motion to quash.

¶ 31    The court made general findings about the three motions, concluding that they were "made in bad faith."

¶ 32    As far as the petition for removal was concerned, the court found as follows:

- In discussing Ms. Arredondo's prayer for relief in the petition for removal, the court explained that, given Ms. Arredondo's history of mental distress and corresponding alleged behavior, "[t]he court cannot find that Mr. Schwiesow acted in good faith in asserting that there were any reasonable grounds by which Ms. Arredondo could be safely reinstated as caretaker, or that [g]uardian could be removed from his position."

- The court reasoned that "Ms. Arredondo has never been guardian in this case, which demonstrates that the [c]ourt never found appointing her to be in the [w]ard's best interests."

- Given Mr. Schwiesow's experience as an attorney working with Ms. Arredondo for many years, he "should be well aware that the [c]ourt could not conceivably make her guardian or

caretaker under the circumstances which are and have been present since the [w]ard was initially removed from her care."

- If, as Ms. Arredondo's motions suggested, "the primary issue was [Ms. Arredondo's] visitation [with the ward]," then the court reasoned that the issue "could have been addressed simply and directly." Instead, Ms. Arredondo and Mr. Schwiesow filed the petition for removal.

- While "[s]eeking to address the issue of visitation between the [w]ard and [Ms. Arredondo] was not necessarily done in bad faith[,] [t]he manner in which [it] was done coupled with other groundless allegations of [Ms. Arredondo]" exhibited bad faith.

- Ms. Arredondo and Mr. Schwiesow did not withdraw the petition for removal "until nearly two months after the arrest which was cited as the basis for the withdrawal."

¶ 33 When discussing the forthwith motion for disclosure, the court found that "the request for medical records was clearly filed in bad faith as it was facially irrelevant to the matter at hand, and the vast majority of arguments made in that motion were either irrelevant or patently offensive."

¶ 34 Turning to the motion to quash, the court found that it "was clearly unsupported by the laws of this state."

¶ 35 In concluding its order, the court found that "these errors, unprofessional behavior, and stubborn litigation [were] the product of both Ms. Arredondo and Mr. Schwiesow's conduct."

C. The Record Supports the Court's Finding of Bad Faith

¶ 36 Ms. Arredondo and Mr. Schwiesow contend that the court abused its discretion when ordering them to pay attorney fees jointly and severally because, they continue, the record does not support findings that they had acted in bad faith. We disagree.

1. Motion to Quash

¶ 37 Initially, Ms. Arredondo and Mr. Schwiesow concede that filing the motion to quash had been "ill-advised" and that the motion "was not well grounded in law." Based on this concession, we conclude that the record supports the court's finding that the motion to quash was filed in bad faith.

2. Petition for Removal

¶ 38 In defense of the petition for removal, Ms. Arredondo and Mr. Schwiesow assert that it "was filed pursuant to the provisions C.R.S. § 15-14-318(4) and § 15-10-503." And they contend that it

14

"set[] forth the grounds under which Ms. Arredondo asserted that [the statutory grounds for the removal of a guardian] were met in numbered paragraphs 1-8." But, given Ms. Arredondo's history of mental health concerns and contacts with the criminal justice system, Mr. Schwiesow's long tenure as her attorney, and the court's repeated refusal to appoint Ms. Arredondo as the ward's guardian, the record supports the court's finding that Mr. Schwiesow "knew, or reasonably should have known, that he would not prevail on [the petition for removal]" when he filed it.

¶ 39    Then, Ms. Arredondo and Mr. Schwiesow submit that, because the petition for removal was withdrawn before the court held a hearing, section 13-17-102 precludes any award of attorney fees. *See* § 13-17-102(5), C.R.S. 2024 ("Attorney fees . . . shall not be assessed if, after filing suit, a voluntary dismissal is filed as to any claim or action within a reasonable time after the attorney . . . or party filing the dismissal knew, or reasonably should have known, that the attorney . . . or party would not prevail on the claim or action.").

¶ 40    The key in this statute is the phrase a "reasonable time after the attorney . . . or party filing the dismissal knew, or reasonably

15

should have known," that they would not prevail on said claim or action. The court found that Ms. Arredondo and Mr. Schwiesow had not withdrawn the motion for two months after Ms. Arredondo's encounters with law enforcement.

¶ 41 Even assuming, for the purposes of argument, that the petition for removal was not filed in bad faith, the court implicitly found that Ms. Arredondo and Mr. Schwiesow had acted in bad faith because they had not withdrawn it within a reasonable time after Ms. Arredondo's contacts with law enforcement. The court added that they should have withdrawn the petition "at the moment when [Mr. Schwiesow] became aware that [Ms. Arredondo] was suffering from yet another mental health crisis." "Yet," the court went on, they did not withdraw the petition "until nearly two months after the arrest which was cited as the basis for the withdrawal of the petition."

¶ 42 Based on the preceding analysis, we conclude that the record supports the trial court's findings that (1) Ms. Arredondo and Mr. Schwiesow filed the petition for removal in bad faith; and (2) their two-month delay in withdrawing it, after it became clear that they

knew, or reasonably should have known, that they would not prevail on it, was in bad faith.

### 3. Forthwith Motion for Disclosure

¶ 43 In support of the forthwith motion for disclosure, Ms. Arredondo and Mr. Schwiesow contend that "the filings speak for themselves." They add that the forthwith motion was not made in bad faith because the guardian had injected the ward's medical or mental condition into the proceedings by making claims that the ward suffered from post-traumatic stress disorder and excessive weight gain from the time when he was in Ms. Arredondo's care. Accordingly, the requested medical records "would be relevant to [guardian's] assertion, or whether the assertion was a red herring."

¶ 44 We disagree for the following reasons.

¶ 45 First, medical records are protected by physician-patient privilege, and the forthwith motion for disclosure did not present any argument why that privilege had been waived.

¶ 46 Second, the request asked for five years of medical records, but Ms. Arredondo had been the ward's primary caretaker for the first four of those years. So she should have already had much of the information covered by the forthwith request.

17

¶ 47    Third, the forthwith request did not connect the requested medical records with the grounds contained in the petition for removal.

¶ 48    Based on the preceding analysis, we conclude that the record supports the trial court's findings that the forthwith motion for disclosure was filed in bad faith.

### 4.    Lack of a Hearing

¶ 49    In the reply brief, Ms. Arredondo and Mr. Schwiesow contend that they should have been given an evidentiary hearing on the issue of whether the three motions had been filed in bad faith. They add that they should have been given a "trial on the merits." *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 300 (Colo. App. 2009).

¶ 50    They raise this assertion for the first time in the reply brief. For example, they filed a lengthy response in the trial court to the motion for attorney fees.  But that motion did not ask the court for an evidentiary hearing.  And they did not raise this assertion in the opening brief.  As a result, we decline to address it.  *Vitetta v. Corrigan,* 240 P.3d 322, 330 (Colo. App. 2009).

### 5.    Conclusion

¶ 51    In summary, our review of the record establishes that the court did not abuse its discretion when it entered the attorney fees order because the order was not manifestly arbitrary, unreasonable, or unfair, and it was not based on a misapplication or misunderstanding of the law.  *See Credit Serv. Co.*, ¶ 24.

### D.    Appellate Attorney Fees and Costs

¶ 52    The guardian asks us to award him attorney fees and double costs associated with this appeal pursuant to sections 13-17-102(2) and 15-10-605(1), as well as C.A.R. 28(b), 38(b), and 39.1. Although we have concluded that the record supports the court's attorney fee order because Ms. Arredondo and Mr. Schwiesow had filed three documents in bad faith, we nevertheless conclude that their position on appeal is neither frivolous as filed nor frivolous as argued.  "Because a lawyer may present a supportable argument which is extremely unlikely to prevail on appeal, it cannot be said that an unsuccessful appeal is necessarily frivolous." *Mission Denver Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984).

### III.    Disposition

¶ 53    The district court's order is affirmed.

JUDGE WELLING and JUSTICE MARTINEZ concur.

19