The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 22, 2025

## 2025COA51

**No. 23CA1608, *Parental Responsibilities Concerning C.E.S.K.* — Family Law — Parental Responsibilities — Permanent Orders — Death of Party Before Entry of Permanent Orders; Courts and Court Procedure — Jurisdiction of Courts — Subject Matter Jurisdiction**

Applying case law involving the pre-decree death of one spouse in a dissolution of marriage proceeding, a division of the court of appeals holds that, in an allocation of parental responsibilities proceeding exclusively between two fit parents, the death of one parent before the entry of permanent orders divests the district court of jurisdiction and requires dismissal of the case. The division further concludes that, having lost jurisdiction upon the death of the parent, a district court may not create a new case or controversy by subsequently allowing another party to intervene.

Court of Appeals No. 23CA1608
Adams County District Court No. 21DR30037
Honorable Judith L. Labuda, Judge

In re the Parental Responsibilities Concerning C.E.S.K., a Child,

and Concerning Noah Ryan Somma,

Appellant,

and

Diane E. Kanagy,

Intervenor-Appellee.

JUDGMENT VACATED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SCHOCK
Freyre and Sullivan, JJ., concur

Announced May 22, 2025

Law Office of Joel M. Pratt, LLC, Joel M. Pratt, Colorado Springs, Colorado, for
Appellant

Law Office of Madeline Wilson, Madeline Wilson, Denver, Colorado, for
Intervenor-Appellee

¶ 1 When parties seek an allocation of parental responsibilities (APR) in a dissolution of marriage proceeding, the pre-decree death of one spouse immediately abates the action and divests the court of jurisdiction to enter any further orders in the case, including an APR order. *In re Marriage of Connell*, 870 P.2d 632, 633-34 (Colo. App. 1994); *Wood v. Parkerson*, 430 P.2d 467, 468-69 (Colo. 1997).

¶ 2 This case presents a closely analogous scenario: the death of one parent during a stand-alone APR proceeding between two fit, unmarried parents. We hold that when no other party has intervened at the time of the parent's death, the same rule applies. Thus, in an APR proceeding exclusively between two fit parents, the death of one parent before a permanent APR order has been entered divests the court of jurisdiction and requires dismissal of the case.

¶ 3 In this case, Noah Ryan Somma (father) petitioned for an APR as to his daughter, C.E.S.K. (the child), who was then living with the child's mother (mother). While the case was pending, mother died. After her death, the child's maternal grandmother, Diane E. Kanagy (maternal grandmother), moved to intervene and sought her own APR. The district court granted the motion and entered

1

permanent orders allocating majority parenting time and sole decision-making responsibility to maternal grandmother.

¶ 4     Father appeals the permanent orders, arguing, among other things, that the district court lost jurisdiction over the case upon mother's death. We agree. We therefore vacate the judgment and remand the case to the district court to dismiss it. We also reverse the award of attorney fees in favor of maternal grandmother.

## I.     Background

¶ 5     The child was born in 2020 and lived with mother in maternal grandmother's home for approximately the first two years of her life. Maternal grandmother assisted mother in caring for the child.

¶ 6     In January 2021, father petitioned for an APR, requesting "50/50 custody" of the child. The petition named mother — and only mother — as a respondent. Mother responded and requested that father be limited to supervised parenting time in her home and that she be awarded sole decision-making responsibility. No one else entered an appearance or moved to intervene at that time.[1]

---

[1] Several months later, father's parents (paternal grandparents) filed a motion to intervene, which the district court magistrate denied.

¶ 7     In November 2021, a district court magistrate entered temporary orders designating mother as the primary residential parent and awarding father incrementally increasing parenting time.  By February 2022, father had parenting time for a twenty-four-hour period, including an overnight, each weekend.  The magistrate found no concerns with the safety or sobriety of either parent.  The court set a permanent orders hearing for July 2022.

¶ 8     Approximately two weeks before the hearing, in late June, mother tragically died.  Mother's counsel notified the court, and the magistrate converted the permanent orders hearing into a status conference.  In the meantime, the child began living with father.

¶ 9     At the status conference, father's counsel explained that father had been "working with maternal grandmother . . . over the past couple of weeks to transition [the child] into his care," and he requested that the child continue to be in his care.  Maternal grandmother was not present or represented at the hearing.  But the magistrate asked mother's counsel if maternal grandmother was "planning to enter as a party into the case."  Mother's counsel said that she was "not exactly sure" and that "at this point [maternal grandmother was] just trying to make a transition as best that she

can." The magistrate then set the case for another status conference "to see if [maternal grandmother] [was] interested in pursuing grandparent visitation or APR as an intervenor or not."

¶ 10 Later that month, maternal grandmother moved to intervene in the ongoing APR proceeding. She asserted that father had been "disallowing [the child] sufficient overnight/daytime visits with maternal grandmother" and requested a shared parenting schedule between herself and father. Father opposed the motion, arguing that maternal grandmother did not have standing to seek an APR.

¶ 11 The magistrate found that maternal grandmother had standing because she had physical care of the child for at least six months before filing her motion, § 14-10-123(1)(c), C.R.S. 2024, and granted the motion to intervene. The magistrate then ordered that, to "maintain[] the status quo," the temporary orders would remain in effect "except that wherever the order refers to [m]other . . . [it] shall now refer to [m]aternal [g]randmother." In other words, the magistrate granted maternal grandmother the same temporary parenting time and responsibilities that mother had.

¶ 12 Father petitioned for district court review of the magistrate's temporary order. The district court concluded that the magistrate's

findings concerning maternal grandmother's standing were insufficient, and it set a further hearing to address that issue.

¶ 13 Father then sought the return of the child to his care through a petition for writ of habeas corpus, asserting that because maternal grandmother's standing had yet to be established, she had no right to keep the child in her care. The magistrate denied the petition and awarded maternal grandmother $1,450.79 in attorney fees under section 13-17-102, C.R.S. 2024.

¶ 14 After a second hearing on standing in December 2022, the district court made additional findings and concluded that maternal grandmother had standing to seek an APR. In April 2023, the district court held a permanent orders hearing and entered permanent orders designating maternal grandmother as the child's primary residential parent, awarding her sole decision-making responsibility, and granting father parenting time on weekends.

## II. Jurisdiction Over APR Proceeding

¶ 15 Father argues that mother's death — before any other party had intervened in the case — deprived the district court of jurisdiction over the case and rendered its subsequent orders void. Because mother's death ended the case or controversy as to the

parties' respective parental rights and responsibilities, we agree. We further hold that, having lost jurisdiction, the court could not create a new case or controversy by allowing maternal grandmother to intervene in father's defunct APR proceeding against mother rather than initiating a new APR proceeding. We thus vacate the judgment and direct the district court to dismiss the case. As a result, we do not address father's other challenges to the APR order.

## A.    Subject Matter Jurisdiction

¶ 16    Subject matter jurisdiction concerns a court's authority to decide a matter. *Dunafon v. Krupa*, 2020 COA 149, ¶ 7. With limited exceptions not relevant in this case, a court's jurisdiction is confined to the resolution of live cases or controversies. *Davidson v. Comm. for Gail Schoettler, Inc.*, 24 P.3d 621, 623 (Colo. 2001). Thus, when the case or controversy before the court ends, so generally does the court's jurisdiction. *Id.* And a judgment entered without subject matter jurisdiction is void. *Dunafon*, ¶ 7; *see also In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo. 1981).

¶ 17    We review the district court's subject matter jurisdiction de novo. *In re Marriage of Roth*, 2017 COA 45, ¶ 13. Although father did not raise this issue in the district court, a challenge to subject

6

matter jurisdiction cannot be waived and may be raised at any time during the case, including for the first time on appeal. *Town of Carbondale v. GSS Props., LLC*, 169 P.3d 675, 681 (Colo. 2007).

### B.    Abatement Upon Death of Party

¶ 18    Under the common law rule of abatement, all legal actions died with the parties. *Sharon v. SCC Pueblo Belmont Operating Co.*, 2019 COA 178, ¶ 12. That rule has been supplanted in most civil actions by the survival statute, which allows an action to be continued against the personal representative of the deceased party. *See* § 13-20-101, C.R.S. 2024; *Sharon*, ¶ 12. But the survival statute generally does not apply to claims for relief that are "entirely personal" to the deceased party. *Sharon*, ¶ 19 n.6.

¶ 19    One such type of action is a dissolution of marriage proceeding. *See Connell*, 870 P.2d at 633 (noting that "[a] divorce action is purely personal in nature"). When a party to a dissolution proceeding dies before the final decree, the action immediately abates and the district court is divested of jurisdiction to proceed further in the case. *Id.* at 633-34; *see also Est. of Burford v. Burford*, 935 P.2d 943, 952 (Colo. 1997). That is because the object of the action — the termination of the parties' marriage — is fully

7

realized by the death of one of the parties. *Connell*, 870 P.2d at 633. The survival statute does not preempt this "long-established rule of abatement" in dissolution proceedings. *Id.* at 634.

¶ 20　　This rule of abatement extends to an APR within a pending dissolution of marriage proceeding. *See Wood*, 430 P.2d at 468. In *Wood*, the wife died while the parties' divorce proceeding was still pending. *Id.* Upon the wife's death, her parents were substituted as parties to the action and entered into a stipulation with the husband that gave the husband "sole care and custody" of the couple's children and the wife's parents visitation rights. *Id.* The district court entered an order approving the stipulation. *Id.*

¶ 21　　The supreme court vacated the order for lack of jurisdiction. *Id.* at 469. It concluded that the district court "had no jurisdiction to enter any order relating to the custody of the minor children or any right of visitation in connection therewith" because the action abated upon the wife's death. *Id.* at 468. The court reasoned that a divorce action is "of a purely personal nature" and that

> [t]he power of the court in such an action to . . . make orders relative to the care and custody of the children is merely incidental to the primary object of changing the status or relation of the parties to each other. Such

actions, in the absence of a statute providing to the contrary, abate absolutely upon the death of either party before judgment and cannot be revived in the name of or against the representatives of the deceased party.

*Id.* at 468-69 (citation omitted).

### C. Application to APR Proceeding

¶ 22     In light of *Connell* and *Wood*, it is clear that if mother and father had been married and the APR had arisen in the context of a dissolution proceeding, *see* § 14-10-123(1)(a)(I), mother's death would have divested the district court of jurisdiction. But no Colorado case addresses the effect of a parent's death on a stand-alone APR proceeding *outside* the dissolution context. Addressing that question, we conclude that when the APR proceeding is exclusively between two fit parents, the same rule applies.[2]

¶ 23     In such an action, both parents are presumed to act in the best interest of the child and have a "fundamental right and

---

[2] The magistrate found in the temporary orders that there were "no concerns" regarding the safety or sobriety of either party and that father was "stable, employed, and . . . lives in a home that he owns." The district court later found in its permanent orders that father is a "fit parent." We do not address a scenario in which the surviving parent has been found to be an unfit parent. *Cf. People in Interest of S.A.G.*, 2021 CO 38, ¶ 21 (explaining that a district court may make factual findings relevant to subject matter jurisdiction).

9

responsibility for the care, custody, and control of the child." *In re B.J.*, 242 P.3d 1128, 1132, 1135 (Colo. 2010); *see also Troxel v. Granville*, 530 U.S. 57, 68, 72 (2000); *In re Marriage of DePalma*, 176 P.3d 829, 832 (Colo. App. 2007). The sole issue is how the parties will share those rights and responsibilities. *See* § 14-10-124(1), (1.5), C.R.S. 2024. Like a spouse's death in a dissolution proceeding, a parent's death during a pending APR proceeding fully resolves that issue. *See Connell*, 870 P.2d at 633. With only one surviving parent (who is fit), there are no longer any parental rights to "allocate" because there is only one person with any such rights.

¶ 24 Moreover, like a dissolution proceeding, an APR proceeding between two fit parents is "purely personal in nature." *Id.* Because of the unique rights parents have concerning the care and custody of their child, no one can step into the deceased parent's shoes the way a personal representative can in a civil action for damages. *See* § 13-20-101(1). Indeed, many of the factors a court must consider when allocating parental responsibilities are inherently personal to the parties, including the wishes of the parents, the interaction and interrelationship of the child with the parents, and the ability of the parties to encourage the sharing of love, affection and contact

between the child and the other party. § 14-10-124(1.5)(a). Those considerations cannot simply be substituted with the interests of a third party. *See In re Adoption of C.A.*, 137 P.3d 318, 327 (Colo. 2006) (holding that a parent and a nonparent are not on equal footing with respect to the best interests of the child).

¶ 25 This conclusion is crystallized when, as in this case, no one has intervened in the APR proceeding at the time of the parent's death. When mother died, the only parties to the proceeding were mother and father. There was thus no one to challenge or rebut father's presumed right to care for his own child. *See DePalma*, 176 P.3d at 832 ("Colorado courts recognize a presumption that a biological parent has a first and prior right to the custody of his or her child."); *see also* 3A Stephen A. Hess, *Colorado Practice Series, Methods of Practice* § 101:4, Westlaw (6th ed. database updated May 2024) (noting that no judicial proceeding is necessary to establish parents as guardians of their own unemancipated minor children). The dispute was limited to how to allocate the parental responsibilities *between* mother and father. Mother's death ended that dispute, leaving the court with no live case or controversy over which to exercise jurisdiction. *See Davidson*, 24 P.3d at 623.

11

¶ 26     We recognize that there is a potential distinction between a dissolution proceeding — which, by its nature, is an action *between* the parties — and a stand-alone APR proceeding — which is centered on the best interests of the child.  *See* §§ 14-10-124(1.5), 14-10-123.4, C.R.S. 2024 (recognizing rights of children in determination of parental responsibilities).  But mother's death — coupled with the absence of any other party contesting father's parenting rights — ended any live case or controversy concerning the best interests of the child as well.  At that point, father was left with the unrebutted presumption that *his* care and custody of the child were in the child's best interests.  *See B.J.*, 242 P.3d at 1133.

¶ 27     We are not persuaded that *Abrams v. Connolly*, 781 P.2d 651, 657 (Colo. 1989), is to the contrary.  In *Abrams*, the mother died several years *after* a final dissolution decree awarded her sole custody of the parties' children.  *Id.* at 653.  Upon her death, one of the children remained in the physical custody of a third party whom mother had designated as the child's guardian in her will.  *Id.*  In rejecting father's argument that he immediately became vested with custody of the child, the supreme court held that "[u]pon the death of a divorced custodial parent . . . the district court retains

12

authority to enter further orders on legal custody of the minor child, even if the surviving parent has assumed physical custody of the child subsequent to the death of the custodial parent." *Id.* at 658.

¶ 28     But the critical distinction between *Abrams* and this case is that, in *Abrams*, there had already been a final order designating the mother as the sole "custodial parent" — i.e., allocating parental responsibilities to her. *See* § 14-10-124(1.5), C.R.S. 1988 (providing that a court may order sole custody *after* making a finding as to the child's best interests); *Wood,* 430 P.2d at 469 (distinguishing a case where a custodial parent dies *after* the divorce decree is entered from one where the parent dies *before* the decree); *see also* § 14-10-103(4), C.R.S. 2024 (explaining that as of February 1, 1999, "the term 'custody' and related terms such as 'custodial' and 'custodian' have been changed to 'parental responsibilities'"). The district court therefore retained continuing jurisdiction to enforce and modify its custody order. *See In re Marriage of Wells*, 780 P.2d 62, 63 (Colo. App. 1989) (noting that district court has continuing jurisdiction in dissolution case to modify custody order after it has been entered).

¶ 29     In contrast, at the time of mother's death, there was no "custodial parent," as that term was used in *Abrams*, because the

13

district court had not entered permanent orders. Although it had entered *temporary* orders, such orders do not determine or "prejudice the rights of the parties or the child which are to be adjudicated at subsequent hearings in the proceeding." § 14-10-108(5)(a), C.R.S. 2024. Thus, when mother died, the district court had not yet made any determination as to which parent was to be allocated parental responsibilities. *See In re Marriage of Fickling*, 100 P.3d 571, 574 (Colo. App. 2004) (holding that temporary orders do not grant "parenting time rights"); *In re Marriage of Monteil*, 960 P.2d 717, 719 (Colo. App. 1998) (noting that a "custodial parent" is determined in permanent orders and holding that a temporary order does not make the residential parent a "custodial parent").

¶ 30 That brings us back to where we began. At the time of mother's death, the APR proceeding was still pending, with mother and father as the sole parties. The "object sought to be attained" by father's petition — an allocation of the parties' respective parental rights and responsibilities — was therefore fully realized by mother's death. *Connell*, 870 P.2d at 633 (citation omitted). Mother could not exercise any rights, and no one else claimed any, leaving no live case or controversy. Thus, as in *Wood*, the APR proceeding

14

"abated upon the death of [mother] and . . . thereafter the [district] court had no jurisdiction to enter any order relating to the [parental responsibilities for] the minor child[]." *Wood*, 430 P.2d at 468.

### D. Maternal Grandmother's Motion to Intervene

¶ 31 We next consider whether maternal grandmother's motion to intervene — filed one month after mother's death and granted five months later — could revive the district court's jurisdiction over the APR proceeding initiated by father. We conclude that it could not.

¶ 32 In an APR proceeding commenced by a parent, the respondent is the child's other parent, guardian, custodian, or person allocated parental responsibilities. § 14-10-123(2). Maternal grandmother was none of those, and she was not named as a respondent in the case. And although "other interested parties" may be permitted to intervene in an APR proceeding upon a showing of good cause, *id.*, maternal grandmother had not done that by the time of mother's death either. *See People in Interest of J.G.*, 2021 COA 47, ¶ 14 ("Generally, intervenors are granted the same rights as all other parties."). Thus, at the point that the district court lost jurisdiction

over the case, maternal grandmother was not a party and had not sought any parental rights or responsibilities as to the child.[3]

¶ 33   It was only one month *after* mother's death that maternal grandmother moved to intervene, seeking for the first time a "shared parenting schedule" with father.  But by then, there was no longer a live APR proceeding for maternal grandmother to intervene in because the underlying dispute — between father and mother — had been extinguished.  *See Adams v. Langdon*, 826 S.E.2d 236, 240 (N.C. Ct. App. 2019) ("[W]here one parent dies in the midst of a custody action, but before the grandparent seeks to intervene, there was no ongoing custody action in which the grandparent could intervene . . . ."); *McDuffie v. Mitchell*, 573 S.E.2d 606, 608 (N.C. Ct. App. 2002).  Intervention necessarily presupposes the existence of an ongoing APR proceeding between the petitioner and the respondent.  And in any event, having lost jurisdiction, the district

---

[3] We do not address a situation in which a grandparent (or other interested party) moves to intervene in the APR proceeding *before* the death of the parent.  *See Alexander v. Alexander*, 856 S.E.2d 136, 151-52 (N.C. Ct. App. 2021) (holding that where grandparents have intervened in a custody proceeding before the parent dies, the district court retains jurisdiction over the grandparents' request).

16

court lacked the authority to enter an order allowing maternal grandmother to intervene. *See Connell*, 870 P.2d at 633-34.

¶ 34 The personal nature of the parental rights and responsibilities at issue distinguishes this case from a situation in which a party sues a deceased (or nonexistent) defendant and later amends the complaint to name a proper party. *See Currier v. Sutherland*, 218 P.3d 709, 713 (Colo. 2009) (holding that a court has subject matter jurisdiction over a case involving a deceased defendant). In such a case, the underlying case or controversy persists, but the deceased party simply lacks the capacity to litigate it. *See id.* In contrast, in an APR proceeding, the death of one parent, with one fit parent surviving — like the death of a spouse in a dissolution proceeding — ends the underlying dispute. *See Connell*, 870 P.2d at 633-34; *Wood*, 430 P.2d at 468. Unlike a deceased defendant's estate, maternal grandmother could not take the place of mother in that dispute. Instead, her claim presented an entirely different dispute.

¶ 35 None of this means that maternal grandmother was without a remedy. If maternal grandmother could establish her standing, she could commence her own APR proceeding to establish her parental responsibilities. § 14-10-123(1)(c). But absent an ongoing live case

17

or controversy, she could not piggyback on husband's petition to do so. *See* § 14-10-123(1), (2) (authorizing any interested party to intervene in an APR proceeding but limiting the commencement of a proceeding to parties who meet specific statutory requirements).

¶ 36 We recognize that the district court effectively treated maternal grandmother's motion to intervene as a new APR petition by requiring her to satisfy section 14-10-123(1)(c). And we further acknowledge the inefficiencies of dismissing the case and starting over in a new one seventeen months after father's petition was filed. But neither we nor the district court may ignore a jurisdictional defect for the sake of expediency. *See People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 21 ("'[J]urisdiction' is the court's authority to hear and determine a matter; it is the court's power to decide.").

¶ 37 Because the district court lacked jurisdiction to proceed in the case once mother died, the permanent orders are void and the case should be dismissed.[4] *See Dunafon*, ¶ 7; *Connell*, 870 P.2d at 634.

---

[4] Because the APR proceeding must be dismissed, the temporary order must also be vacated. § 14-10-125(3), C.R.S. 2024.

## III. Award of Attorney Fees for Habeas Petition

¶ 38 Father also challenges the district court's award of attorney fees to maternal grandmother under section 13-17-102 in connection with his unsuccessful petition for writ of habeas corpus. We agree that the attorney fee award must be reversed.[5]

### A. Jurisdiction, Timeliness of Appeal, and Preservation

¶ 39 We first note that our conclusion that the district court lacked jurisdiction to adjudicate the merits of the APR proceeding does not mean it lacked jurisdiction to enter the fee award. Because section 13-17-102 involves the collateral issue of whether a party has abused the judicial process, such sanctions "may be imposed despite a court's lack of subject matter jurisdiction to adjudicate the underlying merits of the action." *Consumer Crusade, Inc. v. Clarion Mortg. Cap., Inc.*, 197 P.3d 285, 289 (Colo. App. 2008).

¶ 40 We also reject maternal grandmother's conclusory assertion that father's appeal of the attorney fee award was untimely. An

---

[5] Although the attorney fee award arises out of a petition for writ of habeas corpus, father's appeal concerns only the award of attorney fees and not the denial of the habeas petition. *See* § 13-14-102(1)(e), C.R.S. 2024 (providing that the court of appeals does not have jurisdiction over appeals from writs of habeas corpus).

19

award of fees under section 13-17-102 is not appealable until a judgment has been entered on the merits of the underlying action. *State Farm Fire & Cas. Co. v. Bellino*, 976 P.2d 342, 343-44 (Colo. App. 1998); *see also State ex rel. Suthers v. CB Servs. Corp.*, 252 P.3d 7, 13 (Colo. App. 2010) (holding that C.R.C.P. 11 sanctions were not final, appealable orders).  Thus, by timely appealing the permanent orders, father timely appealed the attorney fee award.

¶ 41    Finally, we reject maternal grandmother's contention that father somehow failed to preserve the issue by failing to argue it in the district court.  Father specifically contested the award of attorney fees in his petition for review of the magistrate's order.

### B.    Standard of Review and Applicable Law

¶ 42    Our review of a district court order adopting a magistrate's decision is effectively a second layer of appellate review.  *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22.  We review an award of attorney fees under section 13-17-102 for an abuse of discretion.  *In re Marriage of Tognoni*, 313 P.3d 655, 660-61 (Colo. App. 2011).

¶ 43    A court may award attorney fees if it finds that a party brought an action, or any part of an action, that lacked substantial justification.  § 13-17-102(4).  An action lacks substantial

20

justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a). A claim is frivolous if the party "can present no rational argument based on the evidence or law in support of that claim." *Stepanek v. Delta County*, 940 P.2d 364, 369 (Colo. 1997). The purpose of the statute is to deter egregious conduct. *Id.* A claim is not frivolous simply because the court does not grant the requested relief. *Remote Switch Sys., Inc. v. Delangis*, 126 P.3d 269, 275 (Colo. App. 2005).

¶ 44 In determining whether to award attorney fees under section 13-17-102 and the amount of such award, the court must consider the relevant factors in section 13-17-103(1), C.R.S. 2024, and explain how those factors justify a fee award. *Tognoni*, 313 P.3d at 661. Conclusory statements that a claim is frivolous, groundless, or vexatious do not satisfy the statutory requirement of specificity. *In re Marriage of Aldrich*, 945 P.2d 1370, 1379 (Colo. 1997).

### C.   Additional Background

¶ 45 After the magistrate's temporary order substituting maternal grandmother for mother, thereby making maternal grandmother the child's primary residential parent, the district court partially granted father's petition for review of that order. It concluded that

the magistrate's findings regarding maternal grandmother's standing were insufficient and set a further hearing on that issue.

¶ 46     Two weeks later, before the subsequent hearing had been held, father sought the return of the child to his care under section 13-45-102, C.R.S. 2024, which governs habeas corpus petitions in civil cases. Father argued that, given the district court's "rejection" of the magistrate's order, maternal grandmother was unlawfully confining and restraining the child without any right to do so.

¶ 47     The magistrate denied father's petition on the ground that the temporary order awarding temporary care and control of the child to maternal grandmother "remained in full force and effect." Without further explanation, the magistrate also found that father's petition was "groundless and frivolous," and it awarded attorney fees to maternal grandmother under section 13-17-102. The magistrate later determined the amount of the award to be $1,450.79. Father petitioned for district court review of the award, and the district court initially adopted the magistrate's order.

¶ 48     Father filed a motion for postjudgment relief, arguing that the district court had erroneously applied the statute governing habeas petitions in criminal cases, section 13-45-101, C.R.S. 2024, and

22

concluded that a writ of habeas corpus only applies to state action. The district court agreed. But it nevertheless left the fee award in place, finding that maternal grandmother had not illegally detained the child because its order setting a hearing on the standing issue did not vacate, modify, or reject the magistrate's temporary orders.

## D. Analysis

¶ 49 We agree with father that his habeas petition did not lack substantial justification and that the award of attorney fees under section 13-17-102 was therefore an abuse of discretion.

¶ 50 Section 13-45-102 authorizes a habeas petition in a civil case when a person is "confined or restrained of his liberty under any color or pretense," including "by virtue of any judicial process or order." It may be "an available remedy to adjudicate custody of children under certain circumstances," such as when a third party retains a child in violation of the petitioner's "right to custody" of the child. *Lopez v. Smith*, 360 P.2d 967, 969 (Colo. 1961); *see also People in Interest of A.J.C.*, 88 P.3d 599, 602-03 (Colo. 2004) (describing writ of habeas corpus commanding the parties with whom the child was living to return the child to the mother); *Fackerell v. Dist. Ct.*, 295 P.2d 682, 685 (Colo. 1956) (holding that

23

habeas corpus was a "proper remedy" for the child's mother to seek custody of her child who was adopted without notice to the mother).

¶ 51 As noted above, father had a fundamental right to the care and custody of his child. *B.J.*, 242 P.3d at 1135. On the other hand, the sole legal basis for maternal grandmother's retention of the child was the magistrate's temporary order. Although the district court did not expressly vacate or reject that order, its conclusion that the magistrate's findings were insufficient and its setting of a new hearing meant that the issue of maternal grandmother's standing had not yet been resolved. And until maternal grandmother had established her standing, father's right to the care and custody of the child was superior to hers. *See id.*

¶ 52 Under these circumstances, father's habeas petition for the return of the child did not lack substantial justification. To the contrary, father presented a rational argument based on the facts and the law that the temporary order allocating primary parenting time to maternal grandmother could not remain in effect while her standing was undetermined. *See Stepanek*, 940 P.2d at 369; *see also Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004) ("Standing is a threshold issue that must be satisfied in order to decide a case

24

on the merits."). The district court's rejection of that argument did not make it frivolous. *See Remote Switch Sys.*, 126 P.3d at 275.

¶ 53 We therefore reverse the award of attorney fees to maternal grandmother. *See In re E.K.*, 2022 CO 34, ¶ 32.

## IV. Appellate Attorney Fees

¶ 54 Maternal grandmother requests an award of her appellate attorney fees under section 13-17-102 and C.A.R. 38 on the ground that father's appeal is frivolous. Because we have ruled in father's favor on the jurisdictional issue, we deny this request.

## V. Disposition

¶ 55 The judgment is vacated, and the case is remanded to the district court to dismiss the proceeding. The order awarding attorney fees to maternal grandmother is reversed.

JUDGE FREYRE and JUDGE SULLIVAN concur.